**WILLMAR POULTRY COMPANY, INC.,**
a Minnesota Corporation, Plaintiff,

v.

**Ernest JONES, Director, Bureau of Mediation Services, State of Minnesota, Defendant.**

No. 3–77 Civ. 72.

United States District Court,
D. Minnesota,
Third Division.

April 6, 1977.

As Amended May 12, 1977.

John C. Zwakman, and Douglas E. Ray, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for plaintiff.

Warren Spannaus, Atty. Gen., State of Minnesota by Richard A. Lockridge, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant.

Bruce A. Finzen, Robins, Davis and Lyons, St. Paul, Minn., for intervenor.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court on the plaintiff's motion to preliminarily enjoin the defendant from proceeding with representation proceedings involving certain of the plaintiff's employees.

The plaintiff is a Minnesota corporation engaged in the business of hatching and raising turkeys and of selling agricultural supplies. During the fiscal year which ended September 30, 1976, the plaintiff had gross revenues in excess of $16,000,000. During that fiscal year, the plaintiff shipped in interstate commerce products valued in excess of $3,000,000.

The defendant is the director of the Bureau of Mediation Services of the State of Minnesota. As such, the defendant is empowered by statute[1] to investigate controversies between employers and employees concerning representation for the purpose of collective bargaining, to certify appropriate bargaining units and to conduct representation elections.

During the summer of 1976, certain workers at the plaintiff's turkey hatchery in Willmar, Minnesota, made application for membership in either the Amalgamated Meat Cutters & Food Handlers of North America, AFL–CIO, Local No. 653–653–A ("Meat Cutters") or the United Poultry Workers Local No. 44, Christian Labor Association ("CLA"). On August 6, 1976, the CLA filed a representation petition with the regional director of the National Labor Relations Board ("NLRB"), seeking to represent all hatchery production and maintenance employees, excluding supervisory, management and office clerical employees. The regional director made an informal determination that the employees in question were "agricultural laborers" within the meaning of that term as it is used in the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(3), and were therefore excluded from coverage under the NLRA. The CLA then withdrew its petition, and on

1. Minn.Stat. § 179.01 *et seq.*

September 13, 1976, the regional director advised all parties that the case was closed.

■ On September 15, 1976, the Meat Cutters filed a petition with the defendant, seeking to represent the production workers at the plaintiff's hatchery. On October 6, 1976, the CLA also filed a petition with the defendant, seeking to represent those same workers. The representation proceedings were consolidated, and on October 20, 1976, the defendant conducted a hearing in Willmar, Minnesota. At the hearing the plaintiff contended that the workers in question were "agricultural laborers"[2] and were therefore exempt from coverage under both federal and state law and that, in the alternative, the NLRA's exclusion of "agricultural laborers" preempted any assertion of jurisdiction by the defendant. On December 13, 1976, the defendant ruled that the NLRA did not preempt his assertion of jurisdiction and that the workers in question were not "employees engaged in agricultural labor" within the meaning of Minn. Stat. § 179.01(4).

On January 3, 1977, the plaintiff filed an employer representation petition with the regional director of the NLRB. On January 14, 1977, the regional director issued an order dismissing the petition on the ground that the workers in question were "agricultural laborers."

On January 19, 1977, the plaintiff filed a motion with the defendant, seeking reconsideration of the defendant's earlier assertion of jurisdiction. On February 7, 1977, the defendant denied that motion and scheduled an administrative hearing to consider the appropriate bargaining unit and the timing of an election.[3]

■ The plaintiff invokes the court's subject matter jurisdiction pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 151 *et seq.* Section 1337 is a grant of jurisdiction in all actions and proceedings "arising under any Act of Congress regulating commerce."

It is clear that the NLRA, 29 U.S.C. § 151 *et seq.*, is an "Act of Congress regulating commerce." *Capital Service, Inc. v. NLRB,* 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954). *American Fed'n of Labor v. Watson,* 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946). However, it is not clear that an action seeking to enjoin a state's attempt to regulate labor relations activity left unregulated by the NLRA is an action arising under the NLRA. *Compare Utah Valley Hosp. v. Industrial Comm'n,* 199 F.2d 6 (10th Cir. 1952) (jurisdiction declined) *with NLRB v. Committee of Interns & Residents,* 426 F.Supp. 438 (S.D.N.Y.1977) (jurisdiction exercised).

The issue before the court is one of federal preemption. Because the issue is to be resolved solely by a determination of the applicability of federal law, the court deems it appropriate that the matter be determined by a federal tribunal. *See Empresa Hondurena de Vapores, S.A. v. McLeod,* 300 F.2d 222, 227 (2d Cir.), *vacated on other grounds,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1962). Therefore, the court will exercise jurisdiction over the subject matter.

■ In order to justify the issuance of a preliminary injunction, the moving party has the burden of showing a substantial probability of success at trial and irreparable injury to itself absent injunctive relief. *Minnesota Bearing Co. v. White Motor Corp.,* 470 F.2d 1323, 1326 (8th Cir. 1973); *accord, American Train Dispatchers Ass'n v. Burlington Northern, Inc.,* 551 F.2d 749, 751 (8th Cir. 1977); *Missouri Portland Ce-*

---

**2.** Minn.Stat. § 179.01(4) defines the term "employee" to exclude from coverage "any individual employed in agricultural labor." Although the exclusions contained in Minn.Stat. § 179.01(4) seemed to be patterned after those in 29 U.S.C. § 152(3), and it would therefore seem that the legislature intended to achieve a result parallel to that obtained by the NLRA, the State of Minnesota is, of course, free to develop its own interpretation of its statutory exclusion of individuals employed in agricultural labor. It need not interpret the exclusion in the same way that federal courts and the NLRB have interpreted the NLRA's exclusion of "agricultural laborers." *See, e. g., Minnesota v. National Tea Co.,* 309 U.S. 551, 556, 60 S.Ct. 676, 84 L.Ed. 920 (1940).

**3.** The hearing is presently scheduled to be held on April 12, 1977.

*ment Co. v. H. K. Porter Co.,* 535 F.2d 388, 392 (8th Cir. 1976); *Gadler v. United States,* 425 F.Supp. 244, 246 (D.Minn.1977). Thus, the plaintiff's right to a preliminary injunction is dependent on its ability to show a substantial probability that it will succeed in establishing that the NLRA's exclusion of agricultural laborers from its coverage preempts the State of Minnesota's regulation of labor relations between the plaintiff and its employees whom the NLRB deems to be agricultural laborers.

■ The doctrine of preemption [4] in labor law has been shaped by two competing interests. On the one hand, the broad powers conferred by Congress upon the NLRB to interpret and enforce federal labor law necessarily imply that potentially conflicting rules of law, of remedy, and of administration cannot be permitted to operate. *Vaca v. Sipes,* 386 U.S. 171, 178–79, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). On the other hand, because Congress has refrained from providing specific directions with respect to the scope of preempted state regulations, all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions is not to be declared preempted. *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 289, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

■ Preemption of state regulation occurs where there is a clear manifestation of Congressional intent to occupy the field and supersede the state's exercise of power. *New York State Dep't of Social Services v. Dublino,* 413 U.S. 405, 412, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Schwartz v. Texas,* 344 U.S. 199, 202–03, 73 S.Ct. 232, 97 L.Ed. 231 (1952). In the course of interpreting the NLRA and attempting to delineate the Congress's intent, the Supreme Court has identified a number of different factual patterns wherein federal preemption is indicated. For the purposes of this case, it is appropriate to analyze the cases by dividing them into three categories.

The first category consists of cases where the Board has determined that the activity involved is protected as an employee organizational right, NLRA § 7; 29 U.S.C. § 157, or is prohibited as an unfair labor practice, NLRA § 8; 29 U.S.C. § 158, or where, even though the NLRB has not determined that the conduct is protected or prohibited, the conduct in question may fairly be assumed to be, or is arguably, subject to § 7 or § 8 of the NLRA. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *accord, Farmer v. Carpenters Local 25,* —— U.S. ——, ——, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge, supra; Garner v. Teamsters Local 776,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953); *La Crosse Tel. Corp. v. Wisconsin Employment Relations Bd.,* 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463 (1949).

The second category of cases in which the Court has found that the NLRA preempts state regulation encompasses instances in which the NLRB clearly had jurisdiction but declined to exercise that jurisdiction because to do so would not effectuate the policies of the NLRA. *Bethlehem Steel Co. v. New York State Labor Relations Bd.,* 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947); *accord, Guss v. Utah Labor Relations Bd.,* 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957).

The third category of cases in which the court has found federal preemption of state regulation is where the NLRA neither protects nor prohibits the activity in question, but national labor policy requires that the activity should be wholly unregulated and left to the free play of economic forces.

4. "[I]n referring to decisions holding state laws pre-empted by the NLRA, care must be taken to distinguish pre-emption based on federal protection of the conduct in question * * * from that based predominantly on the primary jurisdiction of the National Labor Relations Board * * *, although the two are often not easily separable." *Brotherhood of R. R. Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 383 n. 19, [89 S.Ct. 1109, 1118, 22 L.Ed.2d 344] (1964). The branch of preemption doctrine most applicable to the instant case concerns federal protection of the conduct in question.

*Machinists Lodge 76 v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976); *Beasley v. Food Fair of North Carolina, Inc.,* 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974); *Teamsters Local 20 v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964); *NLRB v. Insurance Agents Int'l Union,* 361 U.S. 477, 488–89, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960).

It is clear that neither the first nor the second categories of cases would preempt the State of Minnesota's regulation of labor relations between employers and persons whom the NLRB deems to be agricultural laborers. The first category of cases preempting state regulation of labor relations does not apply because none of the activity of agricultural laborers is even arguably protected or prohibited by the NLRA. The second category does not apply because the NLRB has no jurisdiction over agricultural laborers.

State regulations of labor relations activity including agricultural laborers is not preempted on the ground that such activity is either protected or prohibited by the NLRA because the NLRA's protections and prohibitions do not apply to agricultural laborers. Section 2(3) of the NLRA, 29 U.S.C. § 152(3), excludes agricultural laborers from the definition of "employees." Therefore, it follows that provisions of the NLRA employing that pivotal term would cease to operate where agricultural laborers are the focus of concern. Most obviously, § 7 of the NLRA, 29 U.S.C. § 157, which bestows rights upon employees, does not bestow upon agricultural laborers the right to engage in self-organization, collective bargaining and other concerted activities. Accordingly, activity designed to secure organization or recognition of agricultural laborers cannot be protected by § 7. *See Beasley v. Food Fair of North Carolina, Inc., supra, Hanna Mining Co. v. Marine Engineers Beneficial Ass'n,* 382 U.S. 181, 188, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965). Correspondingly, § 8(b) of the NLRA, 29 U.S.C. § 158(b), which defines labor organization unfair labor practices, prohibits no conduct carried on by organizations composed exclusively of agricultural laborers. The only unfair labor practices to which § 8(b) applies are such practices of "a labor organization or its agents." Section 2(5) of the NLRA, 29 U.S.C. § 152(5), provides in pertinent part:

> The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which *employees* participate * * *. (emphasis added)

Thus, "employees" must participate in an organization if it is to be deemed a labor organization. Because agricultural laborers are not "employees," no activity of an organization composed exclusively of agricultural laborers is prohibited by § 8(b). *DiGiorgio Fruit Corp. v. NLRB,* 89 U.S.App.D.C. 155, 191 F.2d 642, 644, *cert. denied,* 342 U.S. 869, 72 S.Ct. 110, 96 L.Ed. 653 (1951). Therefore, because the NLRA neither protects nor prohibits labor relations activity by agricultural laborers, preemption based on the NLRA's protections and prohibitions does not apply.

Nor is state regulation of the activity of agricultural laborers preempted because the area is one in which the NLRB had jurisdiction but declined to exercise that jurisdiction in order to effectuate the policies of the NLRA. In the case of agricultural laborers, once the NLRB determines that they are agricultural laborers and hence not "employees," it has no power over them and no jurisdiction which it might decline to assert. *See Giorgi v. Pennsylvania Labor Relations Bd.,* 293 F.Supp. 873, 875 (E.D.Pa. 1968); *cf. NLRB v. Committee of Interns & Residents, supra* at 449.

It is the preemption principle enunciated in the third category of cases that is at issue in the case presently before the court. The crucial question is whether or not national labor policy requires that labor relations activity involving agricultural laborers be free from all regulation, state as well as federal, and left to the unrestrained interplay of economic forces in the market place.

The court has not been directed to, nor has it found, any explicit expression of a national labor policy that agricultural laborers be denied all representational rights. Despite the lack of any explicit expression of such a policy, the court would feel compelled to conclude that state regulation of labor relations activity involving agricultural laborers had been preempted if the legislative history of the NLRA's exclusion of agricultural laborers from it coverage clearly indicated such an intent or if the exclusion from coverage standing alone were capable of being construed to mean that Congress intended that the area should remain wholly unregulated.

The legislative history surrounding the exclusion of agricultural laborers from the NLRA's coverage is remarkable only because of its paucity. In fact, the legislative history of the NLRA seems to demonstrate that neither Congress nor virtually anyone else was much concerned with the problems of agricultural labor. Morris, *Agricultural Labor and National Labor Legislation,* 54 Calif.L.Rev.1939, 1951 (1966).

In order to declare that the State of Minnesota's regulation of labor relations between agricultural laborers and their employees had been preempted by national labor policy the court would have to be pursuaded that Congress has "unmistakeably ordained" such preemption. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). The court does not find the minimal amount of legislative history which surrounds the exclusion of agricultural laborers from the NLRA's coverage to be thus pursuasive.[5]

Likewise, the exclusion of agricultural laborers from the NLRA's coverage standing alone cannot be construed to mean that Congress intended the area to remain un-regulated. To the contrary, the court is convinced that

> [w]here [the NLRA] leaves the employer-employee relation free of regulation in some aspects, it implies that in such matters federal policy is indifferent, and since it is indifferent to what the individual of his own volition may do, we can only assume it to be equally indifferent to what he may do under the compulsion of the state. Such was the situation in *Allen-Bradley Local v. Board,* 315 U.S. 740, [62 S.Ct. 820, 86 L.Ed. 1154,] where [the Supreme Court] held that employee and union conduct over which no direct or delegated federal power was exerted by the National Labor Relations Act is left open to regulation by the state.

*Bethlehem Steel Co. v. New York State Labor Relations Bd., supra* 330 U.S. at 773, 67 S.Ct. at 1030.

Because there is no legislative history to indicate that the NLRA's exclusion of agricultural laborers from its coverage was intended to leave the area totally free from regulation and because that exclusion standing alone is to be understood to mean that federal policy is indifferent, the third category of cases, like the other two, would not preempt the State of Minnesota's regulation of labor relations activity involving employees whom the NLRB has determined to be "agricultural laborers." Because the court has concluded that state regulation has not been preempted, the court also concludes that the plaintiff has failed to demonstrate a substantial probability that it will succeed at trial.

Because the court has concluded that the plaintiff has failed to establish a substantial probability of success on the merits, it is unnecessary that the court address the issue of whether or not the plaintiff has shown irreparable injury.

---

**5.** The states of Arizona, California, Hawaii, Idaho, Kansas, Massachusetts, and Wisconsin extend the right to bargain collectively to agricultural workers. *See* Levy, *The Agricultural Labor Relations Act of 1975: La Esperanza De California Para El Futuro,* 15 Santa Clara Lawyer 783 (1975); Koziara, *Collective Bargaining in Agriculture: The Policy Alternatives,* 24 Lab. L.J. 424, 426 (1973). Although it is in no way determinative of the case presently before the court, it seems obvious that the legislatures in those states did not consider the NLRA to be preemptive of their enactments.

The above shall constitute the court's findings of fact and conclusions of law.

Upon the foregoing,

IT IS ORDERED That the plaintiff's motion for a preliminary injunction be and hereby is denied.