UNITED FARM WORKERS OF
AMERICA, AFL-CIO, et al.,
Plaintiffs-Appellees,

v.

ARIZONA AGRICULTURAL EMPLOY-
MENT RELATIONS BOARD, et al.,
Defendants-Appellants.

No. 80–5226.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1981.

Decided Jan. 7, 1982.

Thomas N. Crowe, Hiner & Crowe, Phoenix, Ariz., for defendants-appellants.

Elleen J. Eggers, Keene, Cal., for plaintiffs-appellees.

Before WALLACE and KENNEDY, Circuit Judges, and HOFFMAN,* District Judge.

WALLACE, Circuit Judge:

This case presents important issues of federalism arising out of the application of state labor law to a multistate agricultural employer. The Arizona Agricultural Employment Relations Board (Arizona Board) appeals from the district court's order granting a preliminary injunction restraining a union representation election in Arizona among the employees of Bruce Church, Inc. (BCI). Because we find there was no legal basis justifying such equitable relief in this case, we vacate the injunction.

I

BCI, a California corporation, grows and harvests lettuce at four locations in California and two in Arizona. Approximately 90% of BCI's agricultural employees work in both states at various times during the growing season. The remaining 10% work exclusively in Arizona. In 1976, the California Agricultural Labor Relations Board (California Board) determined that a single, statewide unit was appropriate for collective bargaining between BCI and its em-

* Honorable Walter E. Hoffman, United States District Judge, Eastern District of Virginia, sitting by designation.

ployees, "excluding those who work exclusively outside the State of California." The California Board specifically found that it had no jurisdiction over labor matters occurring outside California and thus did not include BCI's Arizona employees within the bargaining unit. On December 13, 1977, following a contested election between the United Farm Workers (UFW) and the Western Conference of Teamsters (Teamsters), the California Board certified the UFW as the exclusive bargaining representative "in the State of California" for BCI's agricultural employees.

Relations between the UFW and BCI have not been smooth. The parties' last collective bargaining agreement expired on January 1, 1979. Collective bargaining negotiations have been on-going, but no agreement has been reached. Since February 9, 1979, the UFW has been on strike against BCI in both California and Arizona. In addition, the UFW filed an unfair labor practice charge with the California Board on September 21, 1978, alleging that BCI had unlawfully assisted the organizational efforts of a rival union. The California Board issued a complaint and notice of hearing on this charge, but the complaint remains pending. The UFW has filed several other unfair labor practice charges with the California Board during the course of its strike against BCI.

On January 31, 1980, a labor union known as the Campesinos Independientes (Campesinos) filed a petition for a union representation election with the Arizona Board, alleging that 30% of BCI's Arizona employees desired representation for collective bargaining. Pursuant to Arizona law, the Board's field representatives investigated this "showing of interest" in order to determine whether there was "reasonable cause" to believe that a "question of representation" existed. Ariz.Rev.Stat. § 23–1389(C)(1) (Supp.1980). The field representatives conducted interviews with BCI employees in Arizona. The representatives did not record the names of the employees interviewed or file a written report with the Arizona Board. Based solely upon the oral findings of its field representatives, the Arizona Board scheduled a hearing to determine whether a "question of representation" existed.

Campesinos and BCI were represented at the hearing, as was the UFW, which was granted leave to intervene for the purpose of urging that the election not be held. The UFW maintained at the hearing that it represented all of BCI's employees, whether they worked in Arizona or in California. BCI contended that both Campesinos and the UFW had claimed to be the bargaining representative for its Arizona employees and requested that the names of both unions be placed on any election ballot submitted. See id. § 23–1389(C)(2) (Supp. 1980). The Arizona Board's hearing officer concluded that a question of representation did exist and directed that an election be held on February 19, 1980, among BCI's Arizona agricultural employees. The ballot choices were ordered to include Campesinos, the UFW and "no union."

The UFW, if it chose to do so, could have appealed the determination of the hearing officer or could have petitioned the Arizona Board to have its name removed from the ballot. It did neither.[1] Rather, it filed this action against the Arizona Board seeking declaratory and injunctive relief to prevent the Board from holding any union representation election in Arizona involving the employees of BCI. In its complaint, the UFW alleged claims for relief under the full faith and credit clause, the first amendment, the due process and equal protection clauses of the fourteenth amendment, the supremacy clause, the commerce clause, 42 U.S.C. § 1983, and one claim for relief for trademark infringement.

Following a hearing, the district court preliminarily enjoined the election. The district court concluded that the Arizona Board must accord full faith and credit to

---

1. The district court specifically found that the UFW did not appeal the hearing officer's decision to the Arizona Board and that the union failed to exercise the procedure by which it could have had its name removed from the election ballot.

the orders of the California Board. The district court also held that there was a violation of due process resulting from the Arizona Board's failure to follow the statutory procedures required when determining whether a "question of representation" existed among BCI's Arizona employees. Thus, the district court issued a preliminary injunction restraining the Arizona Board from conducting an election "pending the final resolution of the unfair labor practice charges against [BCI] by the [California Board], or until further order of [the] Court." The district court held the UFW's remaining contentions to be without merit.[2]

## II

The Arizona Board argues that the district court erred in failing to require the UFW to exhaust its administrative remedies in Arizona. "Under normal circumstances, a party must exhaust its remedies before it can obtain judicial review of an agency decision." *Lloyd C. Lockrem, Inc. v. United States,* 609 F.2d 940, 942 (9th Cir. 1979). The purpose of the exhaustion doctrine is to allow the administrative agency in question to exercise its expertise over the subject matter and to permit the agency an opportunity to correct any mistakes that may have occurred during the proceeding, thus avoiding unnecessary or premature judicial intervention into the administrative process. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *SEC v. G. C. George Securities, Inc.,* 637 F.2d 685, 688 n.4 (9th Cir. 1981). There are several exceptions to the exhaustion requirement, however. Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void. *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 499–500 (9th Cir. 1980). Unless it is specifically required by statute,

application of the doctrine of exhaustion of administrative remedies is within the sound discretion of the district court. *Montgomery v. Rumsfeld,* 572 F.2d 250, 252–53 (9th Cir. 1978). We will not disturb a district court's determination of whether exhaustion is required unless there has been a clear abuse of this limited discretion. *See Aleknagik Natives Ltd. v. Andrus, supra,* 648 F.2d at 500; *Montgomery v. Rumsfeld, supra,* 572 F.2d at 254 & n.4.

It is not disputed in this case that the UFW has failed to exhaust its administrative remedies before the Arizona Board. The UFW could have appealed the Board's hearing officer's determination that a "question of representation" existed or, alternatively, could have petitioned the Arizona Board to remove its name from the BCI ballot.[3] Neither of these options, however, would have prevented an election from being held because, under Arizona law, a union representation election may be challenged on the merits only after it has been completed. A post-election challenge, on the other hand, would defer certification of the victorious union until the Board has investigated the challenge.

The UFW argues that it was not required to exhaust its administrative remedies in this case because those remedies were "futile." Specifically, the UFW contends that the Arizona Board's hearing officer included its name on the ballot over its objection and in spite of an Arizona Board regulation allowing for the removal of a union's name from an election ballot upon request. The UFW's position is that since the hearing officer "made it clear that he was not concerned with the [Board's] regulations," exhaustion would have been "useless." We disagree.

The UFW clearly had a right to appeal the hearing officer's decision. Even assuming that the hearing officer's determi-

---

**2.** None of these issues, including whether conducting an election in Arizona would "unreasonably burden" interstate commerce in violation of the commerce clause, has been raised on appeal. Thus, we do not address them.

**3.** The decisions of the Arizona Board are also subject to judicial review pursuant to Arizona's Administrative Review Act. *See* Ariz.Rev.Stat. § 23–1390(F) (Supp.1980).

nation violated the Arizona Board's regulations, we have no reason to suspect that on appeal the full board would not have followed those regulations. The UFW has not met its burden of showing that an appeal would have been useless. Since a major purpose of the exhaustion doctrine is to allow administrative agencies to correct mistakes that may have occurred in their own proceedings, *Montgomery v. Rumsfeld, supra,* 572 F.2d at 253, we conclude that exhaustion was required.

■ The UFW presses a more basic claim, however. With its members on strike against BCI, the union would not have been satisfied merely with having its name removed from the Arizona ballot. In that situation Campesinos would have been involved in an uncontested election and would have been certified as the bargaining representative for BCI's employees in Arizona unless the employees voted for no union representation. Since, under Arizona law, the UFW could challenge the union representation election only *after* it was held, it claims the administrative remedies in this case were "inadequate" and that forcing it to pursue them would have resulted in "irreparable injury" to its organization efforts. The UFW, however, does not contend that it should be exempted from the exhaustion requirement merely because it has struck BCI's California operations. Rather, it argues that regardless of whether its name was included on the Arizona ballot, the "negative publicity" stemming from a lost election in Arizona would irreparably undermine the public goodwill on which its nationwide consumer boycott against BCI depends.

This argument is without merit. The UFW's allegations of irreparable injury are purely speculative. No affirmative showing whatsoever was made. Nonetheless, the district court found that the UFW would, in fact, suffer irreparable injury from an election in Arizona.[4] We conclude

that this finding, which is without any support in the record, was clearly erroneous. *See City of Anaheim v. Kleppe,* 590 F.2d 285, 288 n.4 (9th Cir. 1978). Moreover, it was an abuse of the district court's limited discretion to fail to weigh this consideration against the other policies warranting exhaustion, specifically the policy against premature interference with state administrative proceedings. *Eluska v. Andrus,* 587 F.2d 996, 999–1000 (9th Cir. 1978); *Montgomery v. Rumsfeld, supra,* 572 F.2d at 253–54.

■ The UFW also asserts that further administrative remedies in this case would have been inadequate, as any Arizona election would undermine the California Board's certification of the UFW as the exclusive statewide bargaining unit for BCI employees. For the reasons discussed below, however, the UFW's certification in California does not preclude Arizona from holding a union representation election, from certifying Campesinos or any other union as the exclusive Arizona bargaining representative for BCI employees, or, indeed, from determining that the employees prefer to be unrepresented by a union. We hold that it was an abuse of discretion not to have required the UFW first to exhaust its administrative remedies in Arizona.

### III

■ The district court held that the Arizona Board was required to give full faith and credit to the orders of the California Board. First, the district court concluded that the California Board's decision certifying the UFW as the exclusive California representative for BCI employees, except those who worked solely in Arizona, should have been respected by the Arizona Board. Second, the district court concluded that the pending unfair labor practice charges filed by the California Board created a "blocking

---

4. The district court found that
 [t]he UFW will be irreparably harmed if the election is held at this time with pending unfair labor [practice] charges in California because the placing of [the] UFW's name on

the ballot will make it appear that [the] UFW is consenting to be a party to the election and is actively campaigning to win the election when in fact the contrary is true.

charge" which, in California, precluded a union representation election until the charges had been disposed of. The district court determined that the blocking charge

> is a determination that a fair election is impossible in ... California among the same employees who perform the same work, for the same company, under the same supervision, with the same machinery, under the same administrative policies. A worker representation election should not be held in Arizona for the same compelling reasons that it should not be held in California.

We disagree and conclude that the full faith and credit clause neither requires the Arizona Board to abide by the California Board's certification decision, nor requires Arizona to apply California law and prevent the election.

■■■■ It is settled that if an administrative agency acts in a judicial capacity, its judgments are entitled to recognition and enforcement pursuant to the full faith and credit clause. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642 (1966). We need not decide, however, whether the California Board's decision certifying the UFW as the exclusive California bargaining representative for BCI employees is a "judgment" entitled to full faith and credit as we have no difficulty concluding that holding a union representation election in Arizona would not offend the dictates of full faith and credit. The ultimate question in full faith and credit analysis is one of *res judicata.* Thus, decisions of the courts or administrative agencies of one state are entitled to the same *res judicata* effect in all other states as they enjoy in the state of rendition. *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 438, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943); *Semler v. Psychiatric Institute of Washington, D. C., Inc.,* 575 F.2d 922, 927 (D.C.Cir.1978).

■■■■ The California Board expressly declined to exercise its jurisdiction extraterritorially. It excluded from its certification · determination all BCI employees who worked exclusively in Arizona. Further, its decision was limited to certifying the UFW as the exclusive union representative for BCI employees "in the State of California." In short, the California Board simply determined that a single, statewide bargaining unit was appropriate for BCI's employees, and certified the UFW as the employees' California representative following the union's election victory over the Teamsters. The *res judicata* effect of this determination is limited to the UFW's status as the employees' California representative. The certification of another union as the employees' exclusive Arizona representative would not be an impermissible collateral attack on the UFW's California certification; it would not in any way conflict with the California Board's determination.

■■■■ The district court also erred when it concluded that a "blocking charge" in effect in California precluded, through operation of the full faith and credit clause, a union election in Arizona. Our analysis on this point must, of necessity, differ somewhat from our previous discussion. None of the parties contends that the issue whether a fair election would be possible in California has been adjudicated before the California Board or the courts of that state. Thus, we have no judicial or administrative judgment the recognition and enforcement of which is governed by the full faith and credit clause. *Cf. Williams v. North Carolina,* 317 U.S. 287, 294–95, 63 S.Ct. 207, 210–211, 87 L.Ed. 279 (1942) (distinction between full faith and credit accorded to sister state judgments and statutes). Rather, the issues presented are (1) whether the "public acts" or statutes of California preclude a union representation election pending final resolution of the unfair labor practice charges filed against BCI, and (2) if so, whether full faith and credit requires Arizona to apply California law and prevent an election in Arizona. The UFW concedes, as it must, that Arizona law poses no barrier to an election in that state.

The Arizona Board vigorously asserts that there is no statute or rule "blocking" an election in California. Rather, the Arizona Board insists that we are faced merely

with an administrative policy to which the full faith and credit clause does not apply. We need not, and do not, decide whether the district court erred in finding that an election in California would be "blocked." Even assuming that California law would preclude an election there pending final disposition of the unfair labor practice charges filed against BCI, the full faith and credit clause does not require Arizona to apply California law. The Supreme Court has recently emphasized in the strongest possible terms that "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Nevada v. Hall*, 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L.Ed.2d 416 (1979) (footnote omitted). The clause clearly does not "enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it." *Pacific Employers Insurance Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 504–05, 59 S.Ct. 629, 633–634, 83 L.Ed. 940 (1939). *See also Carroll v. Lanza*, 349 U.S. 408, 412, 75 S.Ct. 804, 806, 99 L.Ed. 1183 (1955); *Magnolia Petroleum Co. v. Hunt, supra*, 320 U.S. at 436–37, 64 S.Ct. at 212. There has been no assertion in this case that Arizona is not fully competent to apply its own labor laws to the relation between BCI and its Arizona employees. Surely Arizona has sufficient contacts with the parties to this dispute and sufficient interest in the resolution of the controversy that application of its law, as opposed to that of California, is neither arbitrary nor fundamentally unfair. *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981) (plurality opinion). The full faith and credit clause does not alter this result. "The Clause does not ... rigidly require the forum State to apply foreign law whenever another State has a valid interest in the litigation." *Id.* at 322–23, 101 S.Ct. at 645 (Stevens, J., concurring).

◼ Here, Arizona has a legitimate and substantial interest in guaranteeing the right of employees within its jurisdiction to bargain collectively through a union representative voluntarily chosen by them. The full faith and credit clause does not force Arizona to subordinate this interest to that of California. It only requires sufficient contacts with and interest in the dispute to assure that the application of Arizona law is neither arbitrary nor unfair. That test was clearly met in this case. We need not, as some older precedent would suggest, balance the competing interests of California and Arizona. *See Alaska Packers Ass'n v. Industrial Accident Comm'n*, 294 U.S. 532, 549–50, 55 S.Ct. 518, 524–525, 79 L.Ed. 1044 (1935). The Supreme Court has now clearly "abandoned the weighing-of-interests requirement." *Allstate Insurance Co. v. Hague, supra*, 449 U.S. at 308 n.10, 101 S.Ct. at 637.

We readily admit that such a result may at first glance seem anomalous. For the BCI employees who work in both California and Arizona, crossing the Colorado River may result in their being members of a different union or no union. Thus, although BCI employees would be represented by the UFW while picking lettuce in California, they might be represented by Campesinos or no union while picking lettuce in Arizona. This, however, is the natural result of "our constitutional system of cooperative federalism." *Nevada v. Hall, supra*, 440 U.S. at 424 n.24, 99 S.Ct. at 1190. Congress expressly excluded agricultural employees from the National Labor Relations Act, § 2(3), 29 U.S.C. § 152(3). *See Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 300, 97 S.Ct. 576, 578, 50 L.Ed.2d 494 (1977); *NLRB v. Design Sciences*, 573 F.2d 1103 (9th Cir. 1978). Nor has Congress, as it could have, precluded the states from regulating the collective bargaining process in the agricultural industry. The states, therefore, remain fully competent to enact laws governing agricultural labor.

◼ These laws may be, and often are, drastically different in neighboring states. Here, for example, Arizona is a "right to work" state while California is not. Yet there is absolutely nothing inappropriate in such a state of affairs. Where Congress

"leaves the employer-employee relation free of regulation in some aspects, it implies that in such matters federal policy is indifferent . . . ." *Bethlehem Steel Co. v. New York State Labor Relations Board*, 330 U.S. 767, 773, 67 S.Ct. 1026, 1029, 91 L.Ed. 1234 (1947). Thus, where, as here, Congress has chosen not to create a national labor policy in a particular field, the states remain free to legislate as they see fit, and may apply their own views of proper public policy to the collective bargaining process insofar as it is subject to their jurisdiction. We find nothing in the National Labor Relations Act to suggest that Congress intended to preempt such state action by legislating for the entire field. Indeed, we draw precisely the opposite inference from Congress's exclusion of agricultural employees from the Act. *See Willmar Poultry Co. v. Jones*, 430 F.Supp. 573 (D.Minn.1977). *See also Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

The UFW argues that the certification of a second union in Arizona will "deprive BCI workers of rights which were validly acquired in California." Nothing could be further from the truth. Our decision does not prevent the UFW from continuing as the sole bargaining representative for BCI employees in California. The UFW has brought unfair labor practice charges against BCI before the California Board and may continue to do so in the future. Our decision does not "decertify" the UFW in California, does not deprive BCI employees of their UFW memberships, and does not prevent the UFW from continuing to organize its strike against BCI.[5] Our decision does, however, allow Arizona to conduct a union representation election to determine which union, if any, should be certified as the Arizona representative for BCI's employees. Since the UFW members who are on strike against BCI may not be eligible to vote in that election, Campesinos, the rival union, may win. Such a result would not please the UFW, but its remedy is to seek redress before the Arizona Board or from Congress. Nothing in the federal Constitution, statutes, or policy precludes the existence of different unions in different states for the same employees.

 We recognize the possibility that this situation may entail considerable administrative problems. Nonetheless, considerations of convenience cannot justify extending the Constitution in a manner which would upset the delicate balance of federalism. The UFW asks us, in effect, to create a national labor policy for agricultural employees through interpretation of the full faith and credit clause. We reject such an "unnecessarily aggressive application" of the full faith and credit clause. *See Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 285, 100 S.Ct. 2647, 2654, 65 L.Ed.2d 757 (1980). Only Congress, through the exercise of its enumerated powers, has the authority to subordinate the interests of the states to the dictates of national policy. It is not the proper role of the courts to do so.

## IV

The district court concluded that the Arizona Board failed to follow the appropriate statutory procedures to determine whether a "question of representation" existed among BCI's Arizona employees. The court found as a fact that Campesinos did not submit signature cards, signed petitions, or any other proof to support its allegation that 30% of those employees had made a "showing of interest." The district court also found that the Board's field representatives did not determine if the individuals working in BCI's Arizona fields were in fact BCI employees, if they were eligible to vote, or if they had ever expressed an interest in being represented by Campesinos.

---

5. Nor does our decision bar voluntary agreement between the UFW and BCI permitting the union to act as Arizona representative for BCI's employees. *See Babbitt v. United Farm Workers*, 442 U.S. 289, 313, 99 S.Ct. 2301, 2316, 60 L.Ed.2d 895 (1979). Indeed, in their collective bargaining agreement for 1978, the parties agreed that the terms of the contract would apply to BCI's Arizona employees. Since this agreement expired on January 1, 1979, however, it is not relevant to our disposition of the constitutional issue.

The court found that the field representatives had not ascertained the number of BCI employees working in Arizona, their names, or how long they had in fact been employed prior to the time Campesinos filed its petition. Finally, the court found that the field representatives did not report their findings in writing to the Arizona Board.

These findings of fact are not clearly erroneous and we will not disturb them. Fed.R.Civ.P. 52(a); *see National Wildlife Federation v. Adams*, 629 F.2d 587, 590 (9th Cir. 1980). As the district court observed, however, the Arizona Board has no established written or oral procedure for determining a "showing of interest." The nature and extent of the Board's investigation is discretionary; there are no statutory or regulatory requirements as to how such an investigation must be conducted. It was error for the district court to conclude that the "statutory procedures have not been followed" and that this violated the due process clause.[6]

It is undisputed that the UFW had the right under state law, which it was granted, to appear at the hearing where the determination whether a "question of representation" existed was made. During the hearing, the UFW was permitted to argue that no election should be held. We need not decide, therefore, whether the UFW has a "property" or "liberty" interest protected by the due process clause which would require its participation in this or any subsequent hearing. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Babbitt v. United Farm Workers*, 442 U.S. 289, 313, 99 S.Ct. 2301, 2316, 60 L.Ed.2d 895 (1979); *United States*

*ex rel. Walker v. Twomey*, 484 F.2d 874 (7th Cir. 1973). Rather, we conclude that, even assuming the UFW has such a constitutionally protected interest, it has no procedural due process claim because the hearing itself satisfied any requirements which might be imposed by the due process clause. The "showing of interest" investigation is simply a device to determine whether a hearing is required. The UFW does not contend that the hearing was constitutionally inadequate. Since a hearing was held in which the union participated, the union has no cause to complain that the investigation triggering the hearing denied it the procedural protections afforded by the due process clause. *See Whitner v. Davis*, 410 F.2d 24, 28–29 (9th Cir. 1969). *See also NLRB v. W. S. Hatch Co.*, 474 F.2d 558, 562 (9th Cir. 1973).

V

The grant of a preliminary injunction will be reversed on appeal only if the district court abused its discretion or based its decision on erroneous legal premises. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). For the reasons outlined above, we conclude there was no legal basis upon which the district court could justify an injunction in this case. Therefore, we vacate the injunction and remand the case to the district court for further proceedings consistent with this Opinion.

VACATED AND REMANDED.

---

**6.** In its findings of fact, the district court found that the Arizona Board "has no established *written or oral procedure for determining* showing of interest. Each election petition is investigated by the agent under some unspecified direction from the attorney for the [Arizona Board]." Nonetheless, the district court concluded, without providing its reasoning, that the "investigative procedure" utilized in this case violated the due process clause. In its order granting the preliminary injunction, on the other hand, the district court appears to have mistakenly assumed that Arizona law does provide some statutory investigative procedure:

> The investigation provided by law is intended to be precisely that, an investigation, and a mere token effort, without substance, taints the investigation and the election resulting therefrom. The Court does not now determine whether or not the statutory procedures provided by law meet the requirement of due process. The Court does, however, conclude that the statutory procedures have not been followed and that the [UFW] has not been accorded due process.