JEFFREY S. WHITE, United States District Judge
Now before the Court is the motion to dismiss the indictment filed by Defendant Martin Ramos-Urias. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and GRANTS Mr. Ramos-Urias's motion to dismiss. The hearing for this motion, set for January 29, 2019, is HEREBY CONVERTED to a status conference. The government should be prepared to discuss its intent to appeal this Order, and the defense should be prepared to discuss whether Mr. Ramos-Urias will seek to be released.
BACKGROUND
Mr. Ramos-Urias is a Mexican citizen who came to the United States as a child. (See Dkt No. 37-1 (Declaration of Hanni Fakhoury in Support of Motion to Dismiss Indictment ("Fakhoury Decl.") ), Ex. A (Presentence Investigation Report), ¶¶ 40, 41.)[1] Mr. Ramos-Urias has stated he was granted lawful permanent resident status, but he cannot recall when. (Id. ¶ 41.) In 2003, Mr. Ramos-Urias was arrested after police officers recovered twenty grams of methamphetamine and other drug paraphernalia from his vehicle. (Id. ¶ 30.) In 2004, he was sentenced to five years of probation after spending one day in jail. (Id. ) In June of 2005, police found methamphetamine and drug paraphernalia in Mr. Ramos-Urias's car and a firearm and additional drug paraphernalia in his house. (Id. ¶ 31.) His probation was revoked, and he was sentenced to serve sixteen months in state prison. (Id. ¶¶ 30, 31.)
On May 31, 2006, while Mr. Ramos-Urias was in the custody of Immigration and Customs Enforcement ("ICE") officials, he was served a putative notice to appear ("NTA"), alleging he was removable for having committed an aggravated felony. (Fakhoury Decl., Ex. C (Notice to Appear); Declaration of Samantha Schott ("Schott Decl."), Ex. 1.) The NTA specified the removal hearing would occur on a "date to be set" and a "time to be set." (Fakhoury Decl., Ex. C (Notice to Appear).) Mr. Ramos-Urias appears to have requested an immediate hearing in order to expedite a determination of his case, but indicated that he did not waive his right to a ten-day period before appearing before *1033 an immigration judge. (Id. at 2.) The certificate of service on the NTA notes that he received oral notice in English of the time and place of his hearing and of the consequences of the failure to appear at the scheduled hearing. (Id. )
On June 15, 2006, Mr. Ramos-Urias received personal service of a Notice of Hearing in Removal Proceedings from Immigration Court. (Schott Decl., Ex. 2.) This document indicated that Mr. Ramos-Urias's hearing would take place on July 10, 2006, at 8:30 a.m. (Id. ) On this scheduled date, Mr. Ramos-Urias appeared before an immigration judge in Eloy, Arizona. (Fakhoury Decl., Ex. D (July 10, 2006 Immigration Judge Order).) The immigration judge ordered him deported to Mexico. (Id. ) Mr. Ramos-Urias waived his right to appeal and was removed from the United States on July 10, 2006. (Id. ; Fakhoury Decl., Ex. E (Warrant of Removal).)
Mr. Ramon-Urias returned to the United States; in 2007 and was arrested on state charges and subsequently prosecuted for illegal re-entry. (United States v. Ramos-Urias , 07-cr-567-SBA (N.D. Cal.), Dkt. Nos. 1 (Complaint), 6 (Indictment).) He pled guilty to illegal reentry following deportation in the Northern District of California and was sentenced to fifty months in federal prison. (Id. Dkt. Nos. 16, 20.) Mr. Martin-Urias's 2006 removal order was reinstated: he completed his federal sentence and was again deported on May 27, 2011. (Fakhoury Decl., Ex. F (Notice of Intent/Decision to Reinstate Prior Order and Warrant of Removal).)
Mr. Ramos-Urias evidently re-entered the United States thereafter. He was again arrested on state charges on October 25, 2017. (Dkt. No. 1 (Indictment in Above-Captioned Case, 18-cr-76-JSW).) He pled no contest, his probation was revoked, and he was resentenced to 365 days of jail time. (Schott Decl., Ex. 4 (Alameda County Clerks Dockets and Minutes.) During this incarceration, Immigration and Customs Enforcement became aware of his presence in the United States. (Id. ) On February 22, 2018, he was charged with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. (Id. ) On May 15, 2018, Mr. Ramos-Urias entered an open guilty plea to the indictment. (Dkt. No. 13.)
On June 21, 2018, the Supreme Court issued its decision in Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018). Mr. Ramos-Urias had not yet been sentenced in the instant matter, and on August 1, 2018, he filed a motion to withdraw his guilty plea. (Dkt. No. 17.) On October 30, 2018, this Court granted the motion to withdraw. (Dkt. No. 33.) On November 13, 2018, Mr. Ramos-Urias filed a motion to dismiss the indictment. (Dkt. No. 37.)
The Court will address other facts as necessary in its analysis.
ANALYSIS
To secure a conviction under 8 U.S.C. § 1326(a), the government must prove a defendant (i) is an alien, (ii) was previously deported, and (iii) has re-entered the United States without permission. United States v. Raya-Vaca , 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citations omitted). Because a removal order is a predicate element of a conviction under § 1326, a defendant so charged has a due process right to collaterally attack a removal order. Id. (citing § 1326(d) ). Mr. Ramos-Urias challenges the validity of his 2006 deportation because the NTA failed to include the time and date of the hearing as required by 8 U.S.C. § 1229(a) and Pereira. He argues that, because his NTA was invalid, jurisdiction never vested with the immigration court that issued his initial 2006 removal order. For the reasons discussed below, the *1034 Court agrees with Mr. Ramos-Urias and grants his motion to dismiss.[2]
A. A Deficient Notice to Appear Fails to Vest Jurisdiction in Immigration Court.
Under § 1229(a), the government must serve noncitizens in removal proceedings with "written notice (in this section referred to as a 'notice to appear') ... specifying" several pieces of required information including "[t]he time and place at which the [removal] proceedings will be held." § 1229(a)(1)(G)(i). In Pereira , in the context of a mechanism called the "stop-time rule[3] ," the Supreme Court examined this precise statutory scheme and concluded that a putative notice to appear that does not include the time and place at which the removal proceedings would be held is not a notice to appear at all. 138 S.Ct. at 2116 (" Section 1229(a)(1) does not say a 'notice to appear' is 'complete' when it specifies the time and place of the removal proceedings. Rather, it defines a 'notice to appear' as a 'written notice' that 'specif[ies],' at a minimum, the time and place of the removal proceedings.")
Evidently, the Department of Homeland Security's ("DHS") practice is to serve notices to appear indicating the date and time of a removal hearing is "to be determined." See id. , at 2111 ; see also Dkt. No. 41 at 10 n.1. Accordingly, Pereira has occasioned a flurry of motion practice regarding putative notices to appear. District courts are divided over the precise impact of Pereira. Some courts have concluded that the Pereira holding applies only to circumstances involving the calculation of the stop-time rule. See, e.g., United States v. Roberto Arroyo , No. 18-cr-02049-DCG, 2018 WL 6729029, at *11 (W.D. Tex. Dec. 21, 2018) ( Pereira should be narrowly applied only in stop-time rule cases). Others have applied Pereira 's holding to all putative notices to appear, regardless of whether the case at hand implicated the stop-time rule. See, e.g., United States v. Virgen-Ponce , 320 F.Supp.3d 1164 (E.D. Wash. 2018). After careful examination of Pereira , this Court concludes that the definition of "notice to appear" within this statutory scheme is not limited to the application of the stop-time rule.
There is no statutory evidence to support any argument that "notice to appear" means anything other than the explicit definition in § 1229(a). Multiple mechanisms within this statute, not just the stop-time rule, implicate or rely upon a "notice to appear" as defined by § 1229(a). See, e.g. , § 1229a(b)(5)(C)(ii) (noncitizen may seek to reopen removal proceeding to challenge order issued in absentia if he shows he did not receive a notice "in accordance with paragraph (1) or (2) of section 1229(a).") Therefore, to conclude that Pereira 's holding applies only to the application of the stop-time rule is to entertain the idea, without textual support, that a defined statutory term may carry two (or more) meanings within one statutory scheme. Interpreting and applying a statute this way defies common sense, not to mention basic tenets of statutory construction. In re Perroton , 958 F.2d 889, 893 (9th Cir. 1992) ("... in statutes that contain statutory definition sections, it is commonly understood that such definitions establish meaning where the terms appear in that same *1035 Act."). Applying Pereira in this manner is not expansive, as some courts have suggested; it is merely sensible. See Pereira , 138 S.Ct. at 2116 (time and place requirement pursuant to § 1229(a) is "definitional").
The government argues that this Court should defer to the regulations governing the immigration court's rules of procedure. See 8 U.S.C. § 1103(g)(2) (bestowing upon the Attorney General the duty to "establish such regulations ... as the Attorney General determines to be necessary for carrying out this section"). Yet, these regulations do not require "notices to appear" to disclose the time and place of a removal hearing. See 8 C.F.R. § 1003.15(c) (listing required contents for "notice to appear" but omitting statutory date and time requirement); § 1003.18(b) (time and date of removal hearing to be included "where practicable"). To the extent these regulations conflict with the statutory regime giving them authority, the regulations are ultra vires. United States v. Niebla-Ayala , 342 F.Supp.3d 733, 741-43, 2018 WL 6378019, at *4-5 (W.D. Tex. 2018). The statutory definition of "notice to appear" is clear and that concludes this Court's inquiry. Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc. , 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Further, in Pereira , the Supreme Court expressly rejected the regulation-based interpretation in favor of the plain language of the statute. See 138 S.Ct. at 2111-14.[4]
Where these regulations do not conflict with the statute, however, the regulations are entitled to deference on review. Chevron , 467 U.S. at 844, 104 S.Ct. 2778. As the government points out, the statute does not address how jurisdiction vests with the immigration court. The regulations, however, do.
Pursuant to these regulations, "[j]urisdiction vests , and proceedings before an Immigration Judge commence, when a charging document is filed ...." 8 C.F.R. § 1003.14(a) (emphasis added). A "charging document" is "the written instrument which initiates a proceeding before an Immigration Judge" and may be a "[n]otice to [a]ppear." 8 C.F.R. § 1003.13. Under the plain language of these regulations, where there is no valid charging document-in other words, no "notice to appear"-the immigration judge lacks jurisdiction to conduct removal proceedings. See, e.g., United States v. Ortiz , No. 18-cr-00071-RWG, 347 F.Supp.3d 402, 405-07, 2018 WL 6012390, at *2-3 (N.D. Nov. 7, 2018).
An order issued by a court without jurisdiction is void on its face: "[i]f [an] order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." Wilson v. Carr , 41 F.2d 704, 706 (9th Cir. 1930). A removal order issued by an immigration court not yet vested with jurisdiction is invalid: for the purposes of 8 U.S.C. § 1326(a), there has been no removal at all. See Noriega-Lopez v. Ashcroft , 335 F.3d 874, 884 (9th Cir. 2003).
Here, the putative NTA served upon Mr. Ramos-Urias did not include the date and time of his hearing. Accordingly, *1036 the document did not constitute a notice to appear under § 1229(a). Pereira , 138 S.Ct. at 2113-14. Because the immigration court was not served a valid charging document, the court did not have jurisdiction to issue a removal order for Mr. Ramos-Urias. Accordingly, his 2006 removal order was invalid. Because the removal order was invalid, the government cannot satisfy all requisite elements of the indictment, and the indictment must be dismissed.[5]
It is immaterial, for the purposes of this analysis, that Mr. Ramos-Urias requested an expedited hearing, was present at his hearing, was in custody when DHS served his putative NTA, or was served in person. None of these circumstances cure the deficient NTA or bestow jurisdiction upon the immigration court. See Ortiz , 347 F.Supp.3d at 405-07, 2018 WL 6012390, at *2-3 (appearance at removal hearing did not cure invalid notice to appear); See Niebla-Ayala , 342 F.Supp.3d at 742, 2018 WL 6378019, at *5 ; United States v. Zuniga-Vargas , No. 18-cr-00081-MMD-WGC, 2018 WL 6653204, at *2-3 (D. Nev. Dec. 19, 2018) (defendant's request for expedited hearing did not cure jurisdictional defect of invalid notice to appear); Virgen-Ponce , 320 F.Supp.3d at 1166 (service of notice of hearing with date and time of hearing and defendant's appearance at hearing did not cure defective notice of appearance); United States v. Armijo-Banda , No. 18-cr-308-RP, 2018 WL 6201964, at *1-5 (W.D. Tex. Nov. 28, 2018) (noncitizen's custodial status did not cure deficient notice to appear). The immigration court's subsequent service of a notice of hearing also does not cure Mr. Ramos-Urias's deficient NTA. Under the Department of Justice's own regulations, a notice of hearing is not listed as a charging document, and only charging documents can vest an immigration court with jurisdiction. See 8 C.F.R. §§ 1003.13, 1003.14(a).[6]
Finally, the government argues that the "disruptive potential" of invalidating notices to appear based on the failure to include a hearing's date and time is "enormous," noting that hundreds of thousands of cases would be affected. (Dkt. No. 41 at 10 n.1.) The Supreme Court considered and rejected a similar argument in Pereira , 138 S.Ct. at 2111, 2118-19. Such "practical considerations" are "meritless" and do not justify "departing from the statute's clear text." Id. at 2118. Further, as the Court noted, the statute allows for the government to "change or postpone[e]... the time and place of [the removal] proceedings" by issuing another written notice "specifying the new time or place of the proceedings." Id. at 2119 (citing § 1229(a)(2)(A) ). In other words, after serving a compliant notice, the government has a statutory mechanism to adjust a scheduled hearing to address logistical issues that may subsequently arise.
*1037 B. Mr. Ramos-Urias's Removal Was Fundamentally Unfair.
To collaterally attack a removal order a defendant must demonstrate (i) that he exhausted any administrative remedies available to seek relief against the order; (ii) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (iii) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). To show fundamental unfairness, a defendant must establish both that the deportation proceeding violated his due process rights and that the violation was prejudicial. Raya-Vaca , 771 F.3d at 1201.
Some district courts have concluded that, where an underlying removal order is void, the noncitizen need not satisfy the three-part test laid out in § 1326(d) because there can be no collateral challenge to a removal order where there is, in effect, no removal order at all. See, e.g., United States v. Arteaga-Centeno , 18-cr-332-CRB-1, Dkt. No. 35 (N.D. Cal. Jan. 8, 2019). Other courts have concluded the statutory analysis for collateral attack is necessary, regardless of the nullity of the underlying order. See, e.g., United States v. Arturo Rojas Osorio , No. 17-cr-507-LHK, Dkt. No. 49 (N.D. Cal. Jan. 16, 2019). This Court need not decide whether the § 1326(d) analysis is or is not necessary in the context of a void notice to appear, because the Court concludes that Mr. Ramos-Urias makes the requisite showing.
The 2006 removal order was fundamentally unfair under § 1326(d)(3). First, the removal order violated Mr. Ramos-Urias's due process rights because jurisdiction did not vest in the issuing immigration court. See, e.g., United States v. Erazo-Diaz , No. 18-cr-331-1-TUC-RM, 2018 WL 6322168, at *5 (D. Ariz. Dec. 4, 2018). As discussed above, a valid notice to appear is a jurisdictional prerequisite. Neither Mr. Ramos-Urias's receipt of subsequent information regarding the date and time of his hearing nor his subsequent appearance at the hearing cure this jurisdictional deficiency. Second, Mr. Ramos-Urias was prejudiced because he was "removed when he should not have been." See United States v. Aguilera-Rios , 769 F.3d 626, 630 (9th Cir. 2014). Accordingly, the 2006 removal order was fundamentally unfair.
Because Mr. Ramos-Urias has demonstrated a violation of his due process rights, he need not show exhaustion of administrative remedies or that he was denied judicial review pursuant to § 1326(d)(1) and (2). See United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd. , 669 F.2d 1249, 1253 (9th Cir. 1982) ("Exhaustion of administrative remedies is not required where ... the administrative proceedings themselves are void."); Ortiz , 347 F.Supp.3d at 405-07, 2018 WL 6012390, at *2-3 (defendant need not satisfy judicial review requirement where immigration court lacked jurisdiction because requirement "surely ... requires an Immigration Judge's decision be anchored in an exercise of proper jurisdiction."). Moreover, though Mr. Ramos-Urias evidently waived his right to appeal, as indicated on the 2006 removal order, this waiver cannot be considered knowing and voluntary due to the immigration court's lack of jurisdiction. Niebla-Ayala , 342 F.Supp.3d at 745, 2018 WL 6378019, at *7 ("... an invalid waiver improperly deprives the noncitizen of the ability to both exhaust his administrative remedies ... and seek judicial review.")
Mr. Ramos-Urias having mounted a successful collateral attack on the 2006 removal order, this Court grants his motion to dismiss the indictment. See United States v. Cruz-Jimenez , 2018 WL 5779491, at *8 (W.D. Tex. Nov. 2, 2018) ("Because a *1038 valid removal order is a required element under 8 U.S.C. § 1326, the Government is consequently unable to prove an element of the crime charged").[7]
CONCLUSION
For the foregoing reasons, Mr. Ramos-Urias's motion to dismiss is GRANTED, and the indictment is DISMISSED.
IT IS SO ORDERED.

Ex. A to the Fakhoury Decl. is filed under seal, but Mr. Ramos-Urias refers to certain information from that document in publicly-available filings. (See, e.g. , Dkt. 37 p. 6.)

As the Court grants Mr. Ramos-Urias's motion to dismiss on these grounds, the Court declines to address his other substantive arguments.

The Attorney General may cancel removal if the noncitizen has "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application" for cancellation of removal." § 1229b(b). Under the so-called stop-time rule, a period of "continuous physical presence" ends when a noncitizen is served a "notice to appear." § 1229b(d)(1)(A).

The practical effect of this application also gives effect to congressional intent. Indeed, "[f]ailing to specify integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its essential character." Id. at 2116-17 (citations and quotations omitted). The absence, therefore, of those elements is no "trivial, ministerial defect." Id.

A "valid removal order is a predicate element of a conviction for illegal reentry under § 1326." United States v. Vasquez-Gonzalez , 901 F.3d 1060, 1064 (9th Cir. 2018) ; see also United States v. Ubaldo-Figueroa , 362 F.3d 1042, 1047 (8th Cir. 2004) ("[T]he removal order serves as a predicate element of his conviction.").

The government relies on Popa v. Holder , 571 F.3d 890 (9th Cir. 2009) to support its position, but Popa is no longer good law after Pereira. In Popa , the Ninth Circuit acknowledged that § 1229 required a notice to appear to specify the time and place of the removal proceedings, but noted "this court has never held that the [notice to appear] cannot state that the time and place of the proceedings will be set at a future time by the Immigration Court." Id. at 895. The Ninth Circuit continued: "[t]his Court silently has adopted the rule that the time and date of a removal proceeding can be sent after the first notice to appear." Id. Pereira , as explained above, explicitly rejects this reasoning. Under Pereira , a putative notice to appear that lacks date and time information is not a notice to appear.

Mr. Ramos-Urias's 2006 removal order was reinstated in 2011. However, a "successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal reentry." United States v. Arias-Ordonez , 597 F.3d 972, 980, 982 (9th Cir. 2010).