**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Esteban ZALETA–SOSA,**
**Defendant–Appellant.**

No. 87–5587.

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1988.

Carolyn Fuentes, Federal Public Defender, Lucien B. Campbell, Asst. Federal Pub-

lic Defender, San Antonio, Tex., for defendant-appellant.

Judith Patterson, Helen M. Eversberg, U.S. Atty., James Bock, LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GEE and JONES, Circuit Judges.

GEE, Circuit Judge:

Today's case represents mid-range fallout from *United States v. Mendoza–Lopez,* — U.S. ——, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), which overruled many years of our Circuit's precedent that the validity of an underlying deportation order cannot be collaterally challenged in a subsequent prosecution for illegal reentry. *See e.g., United States v. De La Cruz Sepulveda,* 656 F.2d 1129, 1131 (5th Cir.1981). To our good fortune, two earlier panels of our Court have pioneered somewhat in the impact area, reducing the uncertainties attending that opinion. *United States v. Saucedo–Valasquez,* 843 F.2d 832 (5th Cir. 1988); *United States v. Palacios–Martinez,* 845 F.2d 89 (5th Cir.1988). We turn briefly to the facts of today's case before returning to these authorities.

*Facts and Procedural Context*

In 1986, Zaleta–Sosa was arrested as an illegal alien and brought before an immigration judge. Certain features of the hearing which ensued are pertinent for present purposes:

First, Zaleta was given a printed form (Form I–618) in Spanish informing him of his right to appeal from the immigration judge's orders. However, this form was given to him at or just before the time of his hearing, an action which he now contends violates the INS practice of giving the form at the time of arrest. Second, the following coloquy on Zaleta–Sosa's right of appeal occurred (in Spanish) at the hearing:

Q. [By the Court]: And Do [sic] they give you a copy of this deportation complaint under your name together with Form I–618 and a list of attorneys?

A. [By Appellant]: Yes, yes.

Q. Then my order is that you be deported from the United States to Mexico, on the charge contained in the deportation complaint. If you accept this order, then my order is final as of this moment. The immigration officials can then deport you as soon as possible, maybe today. But I want you to understand that if for any reason you do not accept this order, you have 10 days to appeal and ask that this case be transferred to a higher court than this, and that court will review whatever was done here. Do you understand this? What?

A. I understand.

Q. Do you want to accept my order or do you want to appeal to a higher court than this?

A. No, I accept your order.

Third, Zaleta–Sosa's right to an attorney was explained by the immigration judge in this exchange (also in Spanish):

Q. If you want to be represented [by an attorney], then when you tell me, I will pass your case to another day to give you time to make the necessary arrangements. If you have money, of course, you may consult with a private lawyer. But, if you don't have money, you may consult with the agencies that are on the list that you just showed me to see if one of them is willing to represent you free of charge. Do you understand this?

A. Yes, I want to be returned, right?

Q. Yes, but do you understand what I explained to you?

A. Yes.

Q. And, do you want a lawyer or do you want to proceed without a lawyer?

A. No, is better to go back.

Q. But, that is not my question, my question is if you want a lawyer?

A. Oh! No, I do not want a lawyer.

Fourth, there is no indication in the record that Zaleta–Sosa was ever informed

of his right under INS regulations to communicate with the Mexican Consul. *See* 8 C.F.R. § 242.2(e) ("Every detained alien shall be notified that he may communicate with the consul or diplomatic officers of the country of his nationality in the United States."). After the hearing, Zaleta–Sosa was deported to Mexico.

About a year later, Zaleta–Sosa was arrested in Texas for public intoxication, was turned over to immigration officials, and was thereafter indicted under 8 U.S.C. § 1326 for illegal reentry. He argued before the district court that the indictment should be dismissed on several grounds. First, he contended, based on a hint in the (then) recent Supreme Court decision in *Mendoza–Lopez, supra,* that it is per se impermissible to base a criminal conviction on a prior administrative ruling. In the alternative, he argued that *Mendoza–Lopez* required dismissal of the indictment because the deportation hearing had violated his due process rights and he had therefore not knowingly and intelligently waived his right to appeal; (2) because a portion of the immigration judge's statement implied that he would have to shop around and did not have an absolute right to a free attorney, he had not knowingly and intelligently waived his right to counsel. Moreover, aside from any defect in the deportation hearing itself, Zaleta–Sosa argued that it was a violation of due process to use an uncounseled deportation to "enhance" his unlawful entry into the crime of illegal reentry under § 1326. Finally, he maintained that the indictment should be dismissed because of the INS's failure to apprise him of his right to contact the Mexican Consul.

After considering these arguments and the evidence from the deportation hearing, the district court held that there is no per se ban on use of prior administrative decisions as the basis for a criminal prosecution, that Zaleta–Sosa was not denied due process at his deportation hearing, that he had not shown prejudice from the failure to advise him of his right to contact the Mexican Consul, and that his indictment was therefore valid. Zaleta–Sosa pled guilty subject to an appeal from these determinations; he was fined $50 and sentenced to two years in prison. Zaleta–Sosa appeals, pressing the same arguments that he made below.

### *Was the Predicate Deportation Hearing Constitutionally Invalid?*

As we have observed, Zaleta–Sosa's appeal is based primarily on *United States v. Mendoza–Lopez,* —— U.S. ——, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). In that opinion, the Supreme Court determined that Congress did not intend to permit a collateral attack on the underlying, original deportation order by one prosecuted for illegal reentry under 8 U.S.C. § 1326.[1] Even so, the Court determined that—as a Constitutional proposition and independent of the statutory intent—due process requires that certain collateral challenges to the deportation proceeding be entertained. So holding, it went on to approve the invalidation of Mendoza's deportation order by the lower courts on the ground that his deportation proceeding was rendered fundamentally unfair by his waiver of appeal in a manner neither considered nor intelligent. That the intended scope of the opinion is difficult to divine is likely due in part to a curious circumstance: the United States asked the Court to proceed on the assumption that Mendoza's deportation hearing was fundamentally unfair.

---

1. 8 U.S.C. § 1326 reads:

   **§ 1326. Renentry or deported alien**

   Any alien who—

   (1) has been arrested and deported or excluded and deported, and thereafter

   (2) enters, attempts to enter, or is at any time found in the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

   shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

Our uncertainties regarding the opinion's scope and ambit have been greatly reduced, however, by two recent panel opinions of our Court. In the first of these, *United States v. Saucedo–Velasquez*, 843 F.2d 832, a conviction of illegal reentry following deportation was attacked on the ground that Saucedo was a minor of less than eighteen years of age when deported and hence incompetent to waive representation of counsel. Applying the "totality of circumstances" approach to Saucedo's waiver of counsel, the Court, speaking by Judge Williams, determined that Saucedo was an experienced and knowledgeable individual despite his tender years—familiar with deportation procedures by reason of previous voluntary departures and one deportation and with criminal law and procedures through prior arrests, convictions and time served. So determining, the Court ruled that Saucedo's due process rights were not infringed in the underlying deportation proceeding and thus that the proceeding was not fundamentally unfair. It therefore affirmed his conviction.

In the second, another opinion by Judge Williams, the Court took a broader look at *Mendoza*. *United States v. Palacios–Martinez*, 845 F.2d 89 (5th Cir.1988). This was another case involving a claim of an invalid waiver of rights. In dealing with it, the Court construed *Mendoza* as laying down two distinct but related requirements that must be met by an alien wishing to challenge an underlying deportation order in a prosecution under 8 U.S.C. § 1326:

> First of all, the alien must show that the deportation hearing had been fundamentally unfair. In *Mendoza–Lopez*, the government accepted for purposes of the appeal to the Supreme Court that the alien's deportation hearing in that case had been fundamentally unfair. As a result, the *Mendoza–Lopez* opinion focused on whether a collateral attack on a deportation proceeding should ever be permitted, and, if so, under what circumstances should such a collateral attack be permitted. The holding of the Court es-

tablished the second requirement which is that a collateral attack on a deportation hearing should be allowed if, in addition to being fundamentally unfair, the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation order. Such a requirement is legally sound: a collateral attack on the deportation order should not be permitted, even if the deportation hearing had been fundamentally unfair, if there was an opportunity for effective direct judicial review of the deportation order. The Court in *Mendoza–Lopez* held that judicial review of the deportation order had been effectively eliminated in that case through failure of the judge to refer to it and to answer adequately questions regarding relief from deportation. As a result, the deportation order could not be used as the basis for a conviction under 8 U.S.C. § 1326.

845 F.2d at 91.[2]

Applying the test which it had derived from *Mendoza*, the Court then ruled that Palacios's collateral attack broke on the rampart of the first requirement: failure to inform him of miscellaneous subsidiary rights, such as one to be bonded out of custody pending appeal of his deportation order, did not render Palacios's hearing fundamentally unfair.

The same is true of the present appeal. Zaleta's complaints of procedural deficiencies in his deportation proceedings, even if true, are not of such a nature as to render them fundamentally unfair. His first is that the printed I–618 form advising him in Spanish of his right to appeal the orders of the immigration judge was given to him about the time of his hearing rather than at the time of his arrest. His second is that the judge did not "adequately" explain his right to appeal at the hearing—although he concedes that the judge told him in Spanish that "if for any reason you do not accept

---

**2.** Judge Thornberry disagreed with the panel's view that the "somewhat confusing" opinion in *Mendoza* lent itself to the above interpretation, filing a dissent, 845 F.2d at 92. The views of the prevailing majority as to the meaning of *Mendoza* are binding upon us, however.

this order, you have ten days to appeal." [3] Next he complains that in advising him of his right to counsel the judge failed to make clear that he had an unconditional right to *free* representation. His responses make plain, however, that he had no interest in counsel, free or otherwise.[4] Finally, he complains that he was not advised of his right to consult the Mexican Consul.

None of these defects rendered his proceeding fundamentally unfair. Each represents a grace note better sung than omitted, but none was required to carry the essential refrain: Zaleta was advised of his right to counsel and of his right to appeal. The colloquy, quoted at the outset of our opinion, makes plain that he simply wanted to get the hearing over with and to go back to Mexico.[5] He did not want an attorney, he did not want any more formalities, he did not want to appeal: he just wanted to go home.

AFFIRMED.

---

**3.** He responded "I understand" and "I accept your order."

**4.** His first was "I want to be returned, right," his next was "No, is better to go back" and his last was "Oh! No, I do not want a lawyer."

**5.** Moreover, there has been no showing that Zaleta would have had any likelihood of avoiding deportation. He had departed voluntarily once before, but the government argues with some force that his drinking problem and prior immigration violations would have prevented him from succeeding on this claim.