KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendant Francisco Javier Niebla-Ayala's ("Niebla") Motion to Dismiss the Indictment in the above-captioned case. ECF No. 21. For the reasons that follow, the Motion is GRANTED .
I. BACKGROUND
On October 17, 2018, the grand jury sitting in El Paso, Texas, returned a single-count Indictment charging Niebla with illegal reentry in violation of 8 U.S.C. § 1326. ECF No. 10. The government alleges that Niebla is a noncitizen who was found in this country without permission on September 24, 2018, and that he had previously been removed from the United States on or about May 10, 2018. Id. ; ECF No. 1.
Prior to Niebla's removal on May 10, 2018, an officer employed by the Department of Homeland Security personally served Niebla with a document entitled "Notice to Appear" ("NTA") on March 29, 2018. Mot. Ex. C. The NTA ordered Niebla *738 to appear before an immigration judge ("IJ") "to show why [he] should not be removed from the United States based on the charge(s) set forth [elsewhere in the NTA]." Id. However, the NTA did not provide Niebla with a date and time for the removal hearing. Instead, it simply stated he was to appear "TBD." Id.
From the time Niebla received the NTA, he remained in immigration detention at the Otero County Processing Center in Chaparral, NM. Id. ; ECF No. 23 Ex. H. His removal hearing before the IJ began on April 10, 2018. ECF No. 38, Ex. G ("Recording"), Track 1. It is not clear when Niebla learned of the date and time of this hearing. Indeed, the record shows he never received any notice of the date and time.[1] But because Niebla did attend the hearing, albeit without counsel, immigration officials presumably transported him from the detention facility to the immigration court. See id.
The IJ opened the hearing by informing Niebla of his rights, including the right to be represented by a lawyer and the right to appeal any decision the IJ might make in the case. Id. at 1:06-2:03. Niebla responded that he understood his rights and that he wished to represent himself. Id. During the hearing, Niebla informed the IJ that he feared returning to Mexico. Recording, Track 2 at 2:16-19. In response, the IJ provided Niebla an asylum application with instructions on how to complete it, including that it be supported with evidence and written in English. Id. at 2:30-3:07. The IJ gave Niebla until April 26, 2018, to submit the application. Id. at 3:25-30.
On April 26, 2018, Niebla again appeared before the IJ without a lawyer. Recording, Track 4. Niebla explained that he could not prepare his asylum application because he does not speak English and could not find anyone to help him complete it in English. Id. at 2:40-58. The IJ stated, "That excuse is no excuse," but asked whether Niebla needed more time to submit the application. Id. at 3:50-4:00. Niebla responded that he would complete the application if given more time. Id. at 4:12-25. At this, the IJ questioned, "Well, what have you done in order to submit it at this time? Because the court is prepared to deem that you've abandoned it because you haven't submitted it to date." Id. at 4:25-37. Niebla again explained that he could not find someone to help him complete the application in English. Id. at 4:37-58. The IJ asked, "what assurances am I going to get from you that you'll have your application the next time we meet, sir? Because I have the order right here, ordering your removal because you didn't submit your application. Now, do you wish for me to sign that order?" Recording, Track 5 at 0:03-18. After a pause, Niebla, speaking more softly than before, stated: "Sí. " Id. at 0:23-25. The IJ then said he was "ordering Respondent removed from the United States back to his native country and that he's not filing relief and that he's abandoning that relief." Id. at 0:50-1:02. The IJ concluded, "Do you agree with that decision, sir?"Id. at 1:02-05. Quietly, Niebla again responded, "Sí. " Id. at 1:08. With that, the IJ circled the word "Waived" on the removal order, gave the order to Niebla, and concluded the hearing. Id. at 1:10-13; Mot. Ex. D. Niebla did not receive Form EOIR-26 or a Notice of Appeal, which are necessary to appeal the IJ's order. See generally Recording; see *739 8 C.F.R. § 1240.13(d). Niebla also did not receive instruction on the appeals process. See generally Recording; see 8 C.F.R. §§ 1240.13(d), 1240.15.
Instead, Niebla was removed from the United States fourteen days later, on May 10, 2018. ECF No. 10. On September 24, 2018, Niebla returned to the United States, was detained by immigration authorities, and now faces the current prosecution. Id. ; ECF No. 1.
II. DISCUSSION
Niebla moves to dismiss the Indictment, arguing that because the NTA did not indicate the date or time of his removal hearing, the IJ lacked jurisdiction to order him removed on April 26, 2018. Mot. 3-5. Therefore, Niebla asserts, the government cannot prove he was "removed" as a matter of law. Id. Niebla also argues that his underlying removal proceedings violated due process because he never validly waived his right to appeal the IJ's removal order. Mot. 13-14; Reply 14-17. The government argues against dismissal, asserting that the IJ had jurisdiction to order Niebla's removal and that, in any event, Niebla has not satisfied the requirements to collaterally attack that order in this case. See generally Resp.
A noncitizen who has been removed from the United States commits a felony if he subsequently reenters the United States without permission. 8 U.S.C. § 1326. To convict under § 1326, the government must prove that the defendant has in fact been previously removed. United States v. Mendoza-Lopez , 481 U.S. 828, 835, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). The government typically relies upon the removal order itself, issued by the immigration court, to satisfy this burden. Yet, in Mendoza-Lopez , the Supreme Court held that a defendant prosecuted under § 1326 must be able to challenge the government's use of a prior removal as an element of the offense where the removal proceeding "effectively eliminate[d] the right of the alien to obtain judicial review." Id. at 839, 107 S.Ct. 2148.[2]
Congress "effectively codified" this holding in 8 U.S.C. § 1326(d). United States v. Benitez-Villafuerte , 186 F.3d 651, 659 n.8 (5th Cir. 1999). To collaterally attack an underlying removal order, a defendant must show that:
(1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order;
(2) The deportation proceedings at which the order was issued improperly deprived [him or her] of the opportunity for judicial review; and
(3) The entry of the order was fundamentally unfair.
8 U.S.C. § 1326(d).
The defendant must satisfy all three requirements to lodge a successful collateral attack. United States v. Cordova-Soto , 804 F.3d 714, 719 (5th Cir. 2015).[3] If *740 the defendant fails to establish any one requirement, the court need not consider the others. Id. ; United States v. Mendoza-Mata , 322 F.3d 829, 832 (5th Cir. 2003). In addition, the Fifth Circuit requires the defendant to demonstrate that the underlying removal proceedings caused "actual prejudice." Benitez-Villafuerte , 186 F.3d at 658. "Actual prejudice" means "there was a reasonable likelihood that but for the errors complained of the defendant would not have been [removed]." Id. at 659.
Niebla's Motion to Dismiss relies upon the Supreme Court's recent opinion in Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018), to argue that because the NTA lacked the date and time of his removal hearing, the IJ had no jurisdiction to order him removed from the United States, thereby rendering his removal "invalid." Mot. 3-9. The Court agrees with Niebla that the IJ lacked jurisdiction to order him removed from this country. And, as explained below, the Court finds that Niebla has satisfied the requirements in 8 U.S.C. § 1326(d) to successfully challenge his removal order from April 26, 2018.
A. Niebla's NTA Was Defective and, as a Result, the IJ Lacked Jurisdiction to Order Niebla Removed.
Under 8 U.S.C. § 1229a, an IJ "shall conduct proceedings for deciding the inadmissibility or deportability" of a noncitizen present in the United States. 8 U.S.C. § 1229a(a)(1). Department of Justice ("DOJ") regulations delimit the jurisdiction of the IJ. In particular, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14. The regulations define "charging document" to include "a Notice to Appear." Id. § 1003.13; see also Martinez-Garcia v. Ashcroft , 366 F.3d 732, 735 (9th Cir. 2004) ("The only charging document available after April 1, 1997, is the Notice to Appear."). The necessary contents of an NTA, in turn, are provided by statute, which states: "In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given ... to the alien ... specifying," inter alia , "[t]he time and place at which the proceedings will be held." 8 U.S.C.§ 1229(a)(1).
In Pereira , the Supreme Court examined this statutory framework and concluded, "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a).' " 138 S.Ct. at 2113-14. The Court reasoned that the "plain text [of § 1229(a) ], the statutory context, and common sense all lead inescapably and unambiguously to that conclusion." Id. at 2110. The Court described § 1229(a)'s substantive requirements of an NTA as "definitional" and concluded "the omission of time-and-place information is not ... some trivial, ministerial defect .... Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive [the NTA] of its essential character." Id. at 2116-17 (citations and quotation marks omitted).
Following the Supreme Court's holding in Pereira and the clear text of the statute, this Court concludes that because an NTA lacking a date or time is "not a 'notice to appear under section 1229(a),' " it is also not a "notice to appear" within the meaning of DOJ regulations setting the immigration court's jurisdiction. Id.
*741 Courts across the country have reached this same conclusion, including several in this district. See, e.g. , United States v. Virgen-Ponce , 320 F.Supp.3d 1164 (E.D. Wash. 2018) ; United States v. Lopez-Urgel , No. 1:18-CR-310-RP, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018) ; United States v. Aifredo-Valladares , No. 1:17-CR-156-SS, ECF No. 44 (W.D. Tex. Oct. 30, 2018); United States v. Pedroza-Rocha , No. EP-18-CR-1286-DB, ECF No. 53 (W.D. Tex. Sept. 21, 2018); United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018) ; United States v. Ortiz , No. 3:18-CR-00071-RWG, 2018 WL 6012390 (D.N.D. Nov. 7, 2018). Even some courts that have ultimately denied similar motions to dismiss have agreed Pereira requires NTAs to include date-and-time information to vest jurisdiction in the immigration court. See, e.g., United States v. Zapata-Cortinas , No. 18-CR-343-OLG, ECF No. 43, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018) ; United States v. Mendoza-Sanchez , No. 17-cr-189-JD, 2018 WL 5816346, at *2 (D.N.H. Nov. 5, 2018) ; United States v. Santos Larios-Ajualat , No. 18-10076-JWB, 2018 WL 5013522, at *4 (D. Kan. Oct. 15, 2018) ; United States v. Lira-Ramirez , No. 18-10102-JWB, 2018 WL 5013523, at *4 (D. Kan. Oct. 15, 2018).
The government argues against this conclusion, asserting that an NTA served on the noncitizen pursuant to 8 U.S.C. § 1229(a) and an NTA conferring jurisdiction on the immigration court under DOJ regulations are two different documents with separate substantive requirements. Resp. 5-8. The Court disagrees. Rather, there are several reasons to conclude that the NTA defined in § 1229 is the same NTA that vests jurisdiction. To begin, the regulations setting the jurisdiction of the immigration court cite 8 U.S.C. § 1229 as their statutory authority. See 8 C.F.R. §§ 1003.13, 1003.14(a). In addition, the statute and these regulations all pertain to the initiation of removal proceedings and use the same term: "notice of hearing." Compare 8 U.S.C. § 1229(a)with 8 C.F.R. §§ 1003.13, 1003.14(b) ; see also Pereira , 138 S.Ct. at 2128 (Alito, J., dissenting) (recognizing that NTAs under § 1229(a)"serve primarily as a charging document"). Moreover, the regulations themselves require that the NTA filed with the immigration court first be served upon the noncitizen. See 8 C.F.R. § 1003.14(a) ("The charging document must include a certificate showing service on the [noncitizen]."). These parallels among the statute and regulations demonstrate the singularity of the NTA, whether it be served upon the noncitizen or filed with the immigration court.
The government raises additional arguments against the straight forward application of Pereira and the plain text of 8 U.S.C. § 1229(a) in the context of the immigration court's jurisdiction. The Court addresses each in turn.
The government argues that Pereira must be limited to the context of the "stop-time rule." Resp. 11-13. Specifically, the government suggests that the Court in Pereira considered only the "narrow issue" of whether an NTA without date-and-time information triggers the stop-time rule under 8 U.S.C. § 1229b. Id. at 11. While the question presented in Pereira might have been narrow, the Court's holding, that a putative NTA without date-and-time information "is not a 'notice to appear under section 1229(a),' " is sufficiently broad to include this case. See Pereira , 138 S.Ct. at 2113-14.
Certainly, the Pereira Court did not confront a question of the IJ's jurisdiction over removal proceedings, and so it did not address that precise issue. Yet, the Court did interpret the same statute at issue in this case and decided it "unambiguously" requires a valid NTA to provide the date and time of the noncitizen's removal hearing. Pereira , 138 S.Ct. at 2110 (citing *742 8 U.S.C. § 1229(a) ). To hold otherwise here, and ignore the plain language of the statute, would ride roughshod over the reasoning of Pereira . And, because a valid NTA also vests jurisdiction in the immigration court, Pereira 's holding has direct implications in this case. See 8 C.F.R. §§ 1003.13, 1003.14(a). This conclusion is bolstered by the Pereira Court's broader discussion of its holding outside the narrow confines of the stop-time rule. See, e.g., Pereira , 138 S.Ct. at 2114-15 (discussing the need for the NTA to provide date-and-time information to give practical effect to 8 U.S.C. § 1229(b)(1), which mandates that a hearing be scheduled at least ten days after serving the NTA to allow the noncitizen "the opportunity to secure counsel"); id. at 2116 ("[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as a trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)."). These are strong reasons that the holding of Pereira applies in this context, as well.
The government further contends that the NTA served on Niebla provided the IJ with jurisdiction because it complied with the regulatory definition of an NTA found in 8 C.F.R. § 1003.15(b). Resp. 8-9. The Court is not persuaded. After Pereira , there is reason to conclude that § 1003.15(b) is ultra vires -that is, by following the regulation, the immigration court acts outside the bounds of its statutory authority. See City of Arlington v. F.C.C. , 569 U.S. 290, 297, 133 S.Ct. 1863, 185 L.Ed.2d 941 (2013). Regulation § 1003.15(b) cites 8 U.S.C. § 1229 as its statutory authority. See 8 C.F.R. § 1003.15(b). Like § 1229(a), the regulation details the information that must be included in an NTA, such as the nature of the proceedings against the noncitizen, the legal authority under which the proceedings are conducted, and the acts or conduct alleged to be in violation of law. Id. Yet, missing from this list is the date and time of the noncitizen's removal hearing, which is required by 8 U.S.C. § 1229(a).
This inconsistency apparently arose because DOJ promulgated its regulation before 1996, when Congress codified the statutory definition of an NTA in 8 U.S.C. § 1229(a). Congress, in enacting § 1229(a), adopted almost verbatim the previous definition of an "order to show cause"-the charging document formerly used in deportation proceedings[4] -but added a time-and-place requirement for the NTA. Compare 8 U.S.C. § 1252b(a)(1) (1994) (defining the contents of an order to show cause) with 8 U.S.C. § 1229(a). And because 8 C.F.R. § 1003.15(b) predates this statutory NTA definition, see 57 FR 11571 (Apr. 6, 1992), it reflects the information previously required for orders to show cause. While DOJ has seemingly failed to update its regulation to match § 1229(a), this is no reason to ignore the "clear text" of § 1229(a). Indeed, the Supreme Court in Pereira declined to apply Chevron deference to a related regulation because "Congress has supplied a clear and unambiguous answer to the interpretative question at hand." 138 S.Ct. at 2113. And, as Justice Kennedy explained in his concurrence, "an agency's interpretation of the statutory provisions that concern the scope of its own authority" or "jurisdiction" should be accorded little deference. Id. at 2120-21 (Kennedy, J., concurring); see also United States v. Haggar Apparel Co. , 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) (holding that when "the regulation is inconsistent with the statutory language ... the regulation will not control").[5]
*743 Finally, the government argues that any defect in Niebla's NTA was "cured" by the subsequently served Notice of Hearing, which supplied the date and time for the April 26, 2018, removal hearing.[6] Resp. 15-17. To support this argument, the government cites the Fifth Circuit's opinion in Gomez-Palacios v. Holder , 560 F.3d 354, 359 (5th Cir. 2009). Id. The government suggests Gomez-Palacios stands for the proposition that a later-served Notice of Hearing may provide the IJ with jurisdiction over a removal hearing. Id.
To begin, the Pereira Court rejected a two-step approach like that advanced by the government. The Pereira majority dismissed the dissent's argument that " § 1229(a)(1)'s language can be understood to define what makes a notice to appear complete. " Pereira , 138 S.Ct. at 2126 (Alito, J., dissenting). In the dissent's view, a defective NTA could still be a "notice to appear under section 1229(a)" even if lacking date-and-time information. Id. Unpersuaded, the Pereira majority reasoned that § 1229(a)"does not say a 'notice to appear' is 'complete' when it specifies the time and place of the removal proceedings." Id. at 2116. Rather, the statute "defines a 'notice to appear' as a 'written notice' that 'specif[ies],' at a minimum, the time and place of the removal proceedings." Id. (quoting 8 U.S.C. § 1229(a)(1)(G)(i) ). Likewise, a Notice of Hearing-an altogether different document-containing information missing from an NTA does nothing to "complete" or "cure" the defective NTA. See id.
The government's argument fails for two additional reasons: it both ignores the regulatory framework at issue in this case and misreads the Fifth Circuit's opinion in Gomez-Palacios . First, DOJ regulations are clear about which documents may serve as "charging documents" that vest jurisdiction with the immigration court. 8 C.F.R. § 1003.13. "Charging documents" consist of either a "Notice to Appear, a Notice of Referral to Immigration Judge, [or] a Notice of Intention to Rescind and Request for Hearing by Alien." Id. Conspicuously absent from this list is a Notice of Hearing. Thus, a Notice of Hearing is not a valid charging document, and it does not provide the IJ with jurisdiction over removal proceedings. See Martinez-Garcia , 366 F.3d at 735.
Second, the Fifth Circuit's opinion in Gomez-Palacios did not address the question of whether a Notice of Hearing providing date-and-time information can "cure" a defective NTA for jurisdictional purposes. See Gomez-Palacios , 560 F.3d at 358. Rather, the case centered on the question of whether this two-step process may provide the noncitizen with "notice " of the hearing such that the IJ could order him removed in absentia. Id. (emphasis added). Nowhere in the Gomez-Palacios opinion is the word "jurisdiction" mentioned, nor are the jurisdictional regulations cited. See generally id. Because that *744 case did not purport to answer the question presented in this case, its holding does not apply.
Accordingly, this Court will not depart from the statute's clear text. Section 1229(a)"unambiguously" requires an NTA to provide the date and time of the noncitizen's removal proceeding. Pereira , 138 S.Ct. at 2110. Without that "essential" information, a putative NTA is defective. See id. at 2114-15. And because a defective NTA is not a valid charging document, it fails to provide the immigration court with jurisdiction. See DeLeon- Holguin v. Ashcroft , 253 F.3d 811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when [DHS] files the appropriate charging document with the immigration court.").
Moreover, any action by an immigration court without jurisdiction is void. Puc-Ruiz v. Holder , 629 F.3d 771, 782 (8th Cir. 2010) ("When the IJ lacks jurisdiction, his decisions are nullities."). In an analogous context, several circuit courts, including the Fifth, have held that when the Board of Immigration Appeals ("BIA") issues a removal order without statutory or regulatory authority, the order is rendered "a legal nullity." Noriega-Lopez v. Ashcroft , 335 F.3d 874, 884-85 (9th Cir. 2003) ; James v. Gonzales , 464 F.3d 505, 513 (5th Cir. 2006) (adopting the reasoning in Noriega-Lopez ); see also Matter of Reitnauer , 152 F.3d 341, 344 n.12 (5th Cir. 1998) (holding that "jurisdictional defects render a judgment void"). Thus, the defective NTA at issue in this case failed to vest the IJ with jurisdiction over Niebla's removal proceedings. Consequently, the IJ's order that led to Niebla's removal is "a legal nullity." See Noriega-Lopez , 335 F.3d at 884-85 ; James , 464 F.3d at 513 ; Puc-Ruiz , 629 F.3d at 782.
B. Although the IJ Lacked Jurisdiction to Order Niebla Removed on April 26, 2018, Niebla Must Satisfy 8 U.S.C. § 1326(d) to Collaterally Attack the Removal Order.
Niebla suggests that because the current prosecution rests upon an invalid removal order, he might not be required to meet the requirements in 8 U.S.C. § 1326(d) to collaterally attack that order.[7] Mot. 11; Reply 14. This argument finds support in recent district court orders granting motions to dismiss § 1326 indictments after Pereira. See, e.g., Pedroza-Rocha , EP-18-CR-1286-DB, ECF No. 53 at 9 (holding that a "void removal means [the defendant] was not 'removed' as a matter of law" and "the Government cannot satisfy the plain language of § 1326, which applies only to noncitizens who reenter the United States after having been 'denied admission, excluded, deported, or removed.' "); Ortiz , 2018 WL 6012390, at *7 ("Defendant need not satisfy section 1326(d)'s strict requirements because the Immigration Judge lacked jurisdiction from the outset."). However, Niebla's argument falters in light of the text of § 1326(d) and Supreme Court precedent.
The Supreme Court has rejected the argument that only a "lawful" removal may support a § 1326 prosecution. Mendoza-Lopez , 481 U.S. at 833, 107 S.Ct. 2148. Following this, several courts of appeals have held that the "lawfulness" or "validity" of the underlying removal order is not an element the government must prove to convict under 8 U.S.C. § 1326. See, e.g., United States v. Earle , 488 F.3d 537, 547 (1st Cir. 2007) ; United States v. Paredes-Batista , 140 F.3d 367, 376 (2d Cir. 1998) ; United States v. Alvarado-Delgado , 98 F.3d 492, 493 (9th Cir. 1996) (en banc);
*745 United States v. Torres-Sanchez , 68 F.3d 227, 229 (8th Cir. 1995). And § 1326(d)'s categorical language indicates a defendant must establish its elements even if the prior removal order is void for jurisdictional defects. 8 U.S.C. § 1326(d) ("In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates [ § 1326(d)'s three requirements]") (emphasis added). Accordingly, despite the Court's conclusion that Niebla's removal order was invalid, he still must satisfy § 1326(d) for the Court to dismiss the indictment. See Benitez-Villafuerte , 186 F.3d at 658 (explaining that if the defendant cannot meet the requirements to challenge a removal order, the order "may be used to establish an element of a criminal offence") (citation omitted).
C. Niebla Satisfies the Requirements to Collaterally Attack the Removal Order That Led to His Removal on May 10, 2018.
To collaterally attack a removal order in a subsequent § 1326 prosecution, the defendant must satisfy three requirements: "(1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him or her] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d) ; Cordova-Soto , 804 F.3d at 719. The Fifth Circuit also requires that defendants establish "actual prejudice" to succeed in a collateral attack. Benitez-Villafuerte , 186 F.3d at 658. This means demonstrating "a reasonable likelihood that but for the errors complained of the defendant would not have been [removed]." Id. at 659.
1. Administrative remedies and judicial review
DOJ regulations allow a noncitizen to appeal the IJ's removal order to the BIA. 8 C.F.R. § 1003.3.A noncitizen may also generally seek judicial review of a removal order in the court of appeals for the circuit wherein the IJ sits. 8 U.S.C. § 1252 ; see also Diaz v. Sessions , 894 F.3d 222, 226 (5th Cir. 2018) ("We generally have jurisdiction to review orders of removal ...."). When a noncitizen files for review in the court of appeals, the court has exclusive jurisdiction to enter a judgment "determining the validity of, and enjoining, setting aside, or suspending ... the order of the agency." 28 U.S.C. § 2349(a) ; accord Vidal v. Gonzales , 491 F.3d 250, 252 (5th Cir. 2007).
Anyone who validly waives his or her right to appeal an IJ's removal order may not challenge that order during a subsequent§ 1326 prosecution. Cordova-Soto , 804 F.3d at 724 ; United States v. Chavez-Alonso , 431 F.3d 726, 728 (10th Cir. 2005) ; United States v. Garza-Sanchez , 217 F.3d 806, 808 (9th Cir. 2000). However, a valid appellate waiver must be both "considered and intelligent." Mendoza-Lopez , 481 U.S. at 840, 107 S.Ct. 2148. If the IJ accepts an invalid appellate waiver, the noncitizen's due process rights are violated. Id. ; United States v. Gomez , 757 F.3d 885, 893 (9th Cir. 2014).
In the context of a § 1326 prosecution, the defendant may satisfy the first two elements of § 1326(d) by showing he was denied the right to appeal in violation of due process. See Gomez , 757 F.3d at 893 ; United States v. Gonzalez-Villalobos , 724 F.3d 1125, 1130 (9th Cir. 2013) ; United States v. Sosa , 387 F.3d 131, 137 (2d Cir. 2004).[8] This is so because an appellate *746 waiver prevents the BIA and the court of appeals from reviewing the IJ's removal order. 8 C.F.R. §§ 1003.3(a)(1), 1003.39 ; In re Rodriguez-Diaz , 22 I. & N. Dec. 1320, 1322 (BIA 2000) ("By waiving appeal, an alien relinquishes the opportunity to obtain review of the Immigration Judge's ruling."); 8 U.S.C. § 1252 ; see also Claudio v. Holder , 601 F.3d 316, 318 (5th Cir. 2010) (explaining that the circuit court will not review an IJ's order if the noncitizen fails to first appeal to the BIA). Accordingly, an invalid waiver improperly deprives the noncitizen of the ability to both exhaust his administrative remedies with the BIA and seek judicial review. See §§ 1326(d)(1), (2).
Niebla argues that he satisfies § 1326(d)'s first two elements because he did not validly waive his right to appeal the IJ's removal order. Mot. 13; Reply 14-17. In fact, Niebla argues he did not waive his right to appeal at all, citing the complete audio recordings of his April 2018 removal hearings, during which the IJ ordered him removed from this country. Reply 16-17 (citing Recording). The government, for its part, disagrees that Niebla's waiver was invalid, simply asserting that "he affirmatively waived appeal of the immigration judge's order." Resp. 19. As support, the government points to the removal order from April 26, 2018, wherein the IJ circled the word "Waiver." Resp. 2 (citing ECF No. 23 Ex. I). Thus, according to the government, Niebla cannot show that he exhausted his administrative remedies or was improperly denied the opportunity for judicial review. Id.
The circuits are split regarding which party has the burden of demonstrating the validity or invalidity of an appellate waiver in the context of removal proceedings. The Ninth Circuit, for example, requires the government to prove a valid waiver "by clear and convincing evidence." United States v. Reyes-Bonilla , 671 F.3d 1036, 1043 (9th Cir. 2012). In contrast, other circuits place some burden on the defendant, at least when the government first produces "a written and signed waiver of rights." United States v. Soto-Mateo , 799 F.3d 117, 121 (1st Cir. 2015) ; see also Richardson v. United States , 558 F.3d 216, 220 (3d Cir. 2009) (holding that, "in the first instance, the burden of proving waiver" is on the government but, "when there is a written waiver," the defendant must prove "any claim that the waiver was invalid");see also United States v. Arevalo-Tavares , 210 F.3d 1198, 1200 (10th Cir. 2000) (requiring the defendant to overcome the presumption that his immigration proceedings "were conducted in a valid manner"). The Fifth Circuit has yet to weigh in on this issue.[9]
In this case, there is no "signed waiver of rights." See Soto-Mateo , 799 F.3d at 121. Instead, there is only the IJ's written order, on which the IJ circled the word "Waived," indicating Niebla had waived his right to appeal. Mot. Ex. D. Niebla did not sign this order, only the IJ
*747 did. Id. Therefore, the burden-allocating rules of the First and Third Circuits do not readily apply. Yet, the text of § 1326(d) and Fifth Circuit precedent indicate it is the defendant who must establish the three elements to collaterally attack an underlying removal order. 8 U.S.C. § 1326(d) ("[A]n alien may not challenge the validity of the [removal] order ... unless the alien demonstrates [three elements].") (emphasis added); Cordova-Soto , 804 F.3d at 719. The Court need not resolve this issue because, even assuming Niebla bears the burden, he has satisfied it in this case.
It is clear from the complete audio recordings of the removal hearings that Niebla never waived his right to appeal the IJ's removal order. See generally Recording. Toward the end of the removal hearing on April 26, 2018, the IJ told Niebla that he would order him removed if he did not apply for asylum. Id. Track 5 at 0:03-48. When Niebla eventually said that he would not be able to submit an asylum application, id. , the IJ and Niebla engaged in the following exchange:
IJ: Alright, dated today's date, April 26, 2018, the court is ordering Respondent removed from the United States back to his native country and that he's not filing relief and that he's abandoning that relief. Do you agree with that decision, sir?
Niebla: Sí.
IJ: Okay, here's the order. Good luck to you, sir.
Id. at 0:50-1:12.
The IJ did not ask Niebla whether he wished to appeal the removal order or waive that right. See generally id. Instead, the IJ explained the three decisions he was incorporating into the order-(1) to remove Niebla from the United States back to his native country, (2) that Niebla would not file his asylum application, and (3) that Niebla was thereby abandoning his request for asylum-and asked whether Niebla agreed with "that decision." Id. The IJ's question was not only ambiguous as to which of the three decisions he was referring, but it also in no way mentions appellate rights or their waiver.
Circuit-court precedent concerning appellate waivers in removal proceedings supports the conclusion that Niebla did not waive his right to appeal. The Ninth Circuit, for example, found the following exchange insufficient to establish a valid appellate waiver:
IJ: Do you want to appeal my decision?
Respondent: How long might it take me to appeal my decision?
IJ: I can't tell you exactly how long the appellate court will take....
Respondent: ... [I]f your honor would give the opportunity to leave or I would fight this for my children who need me.
IJ: ... [I]t's up to you, if you want to appeal my decision, you can appeal. I'll give you the papers necessary to file your appeal.
Respondent: It would be better if I leave my children, that's fine.
IJ: This is the final order, thank you.
United States v. Pallares-Galan , 359 F.3d 1088, 1093, 1097-98 (9th Cir. 2004).
The Pallares-Galan court explained that although the respondent seemingly "knew what an appeal was, the record strongly suggests that his decision not to invoke that right was not 'considered and intelligent.' " Id. at 1098. In particular, "Pallares did not at any time respond in the affirmative regarding his wish to forego an appeal," and his reply-"It would be better if I leave my children, that's fine"-conveyed "significant confusion about ... the appeals process." Id. And "the IJ's failure to follow-up after [Pallares's] cryptic statement ... may have conveyed the message *748 that [he] should accept [his] deportation and not appeal." Id.
If the appellate waiver at issue in Pallares-Galan was not "considered and intelligent," then neither was Niebla's purported waiver here. See id. ; Mendoza-Lopez , 481 U.S. at 840, 107 S.Ct. 2148. The IJ in Pallares-Galan asked the respondent whether he wanted to appeal and explained that he would receive the necessary paperwork for filing the appeal. Pallares-Galan , 359 F.3d at 1093. That did not happen during Niebla's removal proceeding-the IJ altogether failed to question whether Niebla chose to appeal the removal order or forgo that right. See generally Recording. Instead, the IJ unilaterally circled the portion of the order indicating that Niebla had waived appeal, gave the order to Niebla, and ended the hearing. Id. , Track 5 at 1:10-12; Mot. Ex. D.
Moreover, this case is distinguishable from a Fifth Circuit case that upheld the validity of an appellate waiver. See United States v. Zaleta-Sosa , 854 F.2d 48, 49, 51 (5th Cir. 1988). In Zaleta-Sosa , the noncitizen's waiver resulted from the following exchange:
IJ: Do you wish to accept my order or do you want to appeal to a higher court than this?
Respondent: No, I accept your order.
Zaleta-Sosa , 854 F.2d at 49, 51.
Just as in Pallares-Galan , the IJ in Zaleta-Sosa explicitly asked the respondent whether he would seek an appeal. Id. This sharply contrasts to what occurred in Niebla's removal proceedings, where there was no discussion of an appeal or mention of waiver. Zaleta-Sosa demonstrates the Fifth Circuit's recognition that for a noncitizen to validly waive his appellate rights, he must, at the very least, be asked whether he chooses to do so. Id. at 49. Because Niebla was never afforded the opportunity to waive his right to appeal, and because Niebla never indicated his intention to do so, his purported waiver-shown only by the IJ's circling of the word "Waived" on the removal order-is not valid. See Pallares-Galan , 359 F.3d at 1098 ; cf. Zaleta-Sosa , 854 F.2d at 49, 51.
That the IJ had previously told Niebla of his appellate rights does not affect the Court's conclusion. The IJ had mentioned the right to appeal only on April 10, 2018, when Niebla first appeared for his removal proceedings. Recording, Track 1 at 1:57-2:03. The IJ did not reiterate this information when Niebla attended the hearing sixteen days later, on April 26, 2018, when the IJ ultimately ordered Niebla removed. See generally Recording, Tracks 4, 5. Notably, the Fifth Circuit recognizes that simply informing noncitizens of their rights in removal proceedings does not guarantee the validity of any purported waiver. See Partible v. INS , 600 F.2d 1094, 1096 (5th Cir. 1979). The Fifth Circuit has invalidated a noncitizen's waiver of the right to counsel in removal proceedings even though the IJ had explained her right to counsel and she elected to proceed unassisted. Id. The Fifth Circuit decided the affirmative waiver was "not competently and understandably made" because the noncitizen had not fully realized the "cogent legal arguments which could have been made on her behalf." Id. Here, not only was there no competent waiver, there was no waiver at all: Niebla never relinquished his right to appeal, explicitly or implicitly. See generally Recording. Therefore, that the IJ told Niebla of his right to appeal sixteen days before ordering him removed did nothing to create a valid waiver. See Partible , 600 F.2d at 1096 ; Pallares-Galan , 359 F.3d at 1098.
In sum, Niebla has satisfied his burden of demonstrating the invalidity of his purported appellate waiver. See Pallares-Galan , 359 F.3d at 1098 ; cf. Zaleta-Sosa , 854 F.2d at 49, 51. As a result, he has met the *749 first two requirements of § 1326(d) to collaterally attack the removal order underlying this case. See Gomez , 757 F.3d at 893 ; Gonzalez-Villalobos , 724 F.3d at 1130 ; Sosa , 387 F.3d at 137.
2. Fundamental fairness and actual prejudice
Niebla also must show that entry of the removal order was "fundamentally unfair." See 8 U.S.C. § 1326(d)(3). "Fundamental fairness is a question of procedure." United States v. Lopez-Ortiz , 313 F.3d 225, 230 (5th Cir. 2002). Specifically, due process requires that a noncitizen facing removal receive "(1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." Id. (citing Kwong Hai Chew v. Colding , 344 U.S. 590, 597-98, 73 S.Ct. 472, 97 L.Ed. 576 (1953) ). In addition, Niebla must show "actual prejudice"-that is, that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been [removed]." Benitez-Villafuerte , 186 F.3d at 659.
First, Niebla argues that the entry of his removal order was "fundamentally unfair" because the IJ lacked jurisdiction to order him removed and incorrectly noted on the order that he had waived his appellate rights. Mot. 12-13; Reply 14-18. The government argues otherwise, contending that "[b]ecause the defendant was provided notice of his hearing and personally appeared at the hearing, due process was satisfied." Resp. 17.
Niebla has successfully shown the fundamental unfairness of the removal proceedings that resulted in his removal on May 10, 2018. See 8 U.S.C. § 1326(d)(3) ; Lopez-Ortiz , 313 F.3d at 230 ; Kwong Hai Chew v. Colding , 344 U.S. at 597-98, 73 S.Ct. 472. Specifically, by indicating on the removal order that Niebla had waived his right to appeal, the IJ prevented Niebla from obtaining review of that order by the BIA and the court of appeals. As discussed above, the BIA will not consider an appeal from an individual who has waived his right to appeal. In re Rodriguez-Diaz , 22 I. & N. Dec. at 1322. And the court of appeals will not hear an appeal from an individual who did not first exhaust his claims with the BIA. Claudio , 601 F.3d at 318. Further, an appellate waiver is invalid if not "considered or intelligent." Mendoza-Lopez , 481 U.S. at 840, 107 S.Ct. 2148. Thus, the IJ's actions improperly deprived Niebla of his right to appeal the removal order-a right guaranteed by both statute and DOJ regulation. See 8 U.S.C. § 1252 ; 8 C.F.R. §§ 1003.3, 1003.39.[10] This denied Niebla a "fair opportunity to be heard," rendering his removal proceedings "fundamentally unfair." See 8 U.S.C. § 1326(d)(3) ; Lopez-Ortiz , 313 F.3d at 230 ; Kwong Hai Chew , 344 U.S. at 597-98, 73 S.Ct. 472.
Second, Niebla argues the underlying removal proceedings caused "actual prejudice"-that is, but for the IJ's errors, it is reasonably likely he would not have been removed. Mot. 13; Reply 16-17. The government again disagrees, asserting "the defendant's removal was a 'foregone conclusion':
*750 he was a Mexican citizen with no lawful status in the United States." Resp. 18 (citation omitted).
The Court finds that Niebla has established "actual prejudice." See Benitez-Villafuerte , 186 F.3d at 659. But for the IJ wrongly indicating that Niebla had waived his appellate rights, it is reasonably likely that Niebla would not have been removed. See id. The government's argument ignores that a noncitizen may obtain relief from removal by advancing argument in the immigration court, the BIA, or the court of appeals.
Had Niebla not been improperly denied the opportunity to do so, he could have appealed the IJ's denial of his request for more time to complete an asylum application. See Recording, Track 4 at 4:12-25. While the IJ had discretion to grant or deny that request "for good cause shown," see 8 C.F.R. § 1003.29, the Attorney General recently reiterated the BIA's important power in reviewing the IJ's decision to grant or deny continuances, see generally Matter of L-A-B-R , 27 I. & N. Dec. 405 (A.G. 2018). Specifically, it is reasonably likely that the BIA would have found "good cause" existed to grant additional time for Niebla to complete his asylum application. See id. at 415 (recognizing "the probability that a respondent's [asylum request] will succeed" as "the most important consideration in the good-cause analysis"). Niebla had identified his lack of understanding of English as the primary barrier to his completing the asylum application. See Recording, Track 4 at 2:40-58, 4:12-25. But this is no indication that Niebla could not submit a substantively valid application. Indeed, as discussed below, Niebla's factual assertions in the Motion to Dismiss demonstrate the fair "probability" that he would have qualified for asylum had he been given the opportunity to seek the BIA's review of his removal order. See Matter of L-A-B-R , 27 I. & N. Dec. at 415 ; Mot. 1-2.[11]
Under DOJ regulations, a noncitizen "may be granted asylum" if "there is a reasonable possibility that he or she may suffer other serious harm upon removal to [his or her home country]." 8 C.F.R. § 1208.13(b)(1)(iii)(B) ; Matter of L-S- , 251 I. & N. Dec. 705, 713 (BIA 2012). The "other serious harm" that the asylum applicant must likely face "need not be inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion." Matter of L-S- , 251 I. & N. Dec. at 713. "However, such harm must be so serious that it equals the severity of persecution." Id. For example, "[m]ere economic disadvantage or the inability to practice one's chosen profession would not qualify as 'other serious harm.' " Id.
Here, it is reasonably likely Niebla could have qualified for asylum because he has shown "a reasonable possibility that he ... may suffer other serious harm upon removal" to Mexico. See 8 C.F.R. § 1208.13(b)(1)(iii)(B) ; Matter of L-S- , 251 I. & N. Dec. 705, 713 (BIA 2012). Niebla came to the United States in 2017 to seek asylum because "a group of armed men," in Mexico had tortured him "for two days with knives, electric shocks, burning hot nails, and baseball bats."[12] Mot. 1. Niebla alleges the police in Mexico were complicit in his torture. Id. And while Niebla eventually escaped, his coworkers and supervisor were tortured and murdered by the same armed men. Id. at 2. Indeed, when Niebla first appeared before the IJ on *751 April 10, 2018, he reiterated his continuing fear of returning to Mexico. Recording, Track 2 at 2:16-19.
The Court finds that Niebla's experiences in Mexico amounted to "other serious harm" within the meaning of DOJ regulations pertaining to asylum. See 8 C.F.R. § 1208.13(b)(1)(iii)(B) ; Matter of L-S- , 251 I. & N. Dec. at 713. There is clearly a "reasonable possibility" that Niebla faces additional torture, or even death, if he returns to Mexico. See 8 C.F.R. § 1208.13(b)(1)(iii)(B) ; Matter of L-S- , 251 I. & N. Dec. at 713. He already escaped prolonged torture from the same group of armed men that tortured and murdered his coworkers and supervisor. And because the Mexican police officials were complicit in his torture, it is unlikely that they will protect him in the future.
Accordingly, it is reasonably likely that Niebla could have qualified for asylum had he been able to properly present his case to the BIA. See 8 C.F.R. § 1208.13(b)(1)(iii)(B) ; Matter of L-S- , 251 I. & N. Dec. at 713. Therefore, he has met his burden of showing "a reasonable likelihood that but for the errors complained of"-his invalid appellate waiver-he "would not have been [removed]." See Benitez-Villafuerte , 186 F.3d at 659.
In sum, Niebla has established "actual prejudice" and the three elements of § 1326(d) to collaterally attack the IJ's order that led to his removal on May 10, 2018. See id. ; Cordova-Soto , 804 F.3d at 719. Because the Indictment in this case rests upon that removal, see ECF No. 10, the Court will dismiss the Indictment. See 8 U.S.C. § 1326(d) ; United States v. Segundo , No. 4:10-CR-0397, 2010 WL 4791280, at 12 (S.D. Tex. 2010) (dismissing a § 1326 indictment after finding the defendant had successfully challenged the underlying removal proceedings). The Motion is granted.
III. CONCLUSION
Niebla has satisfied all requirements to collaterally attack the removal proceedings forming the basis of the Indictment this case. See ECF No. 10; 8 U.S.C. § 1326(d) ; Cordova-Soto , 804 F.3d at 719 ; Benitez-Villafuerte , 186 F.3d at 659. Accordingly, his Motion to Dismiss the Indictment, ECF No. 21, is GRANTED .
SO ORDERED.

The government's exhibits include a Notice of Hearing in Removal Proceedings issued to Niebla on April 10, 2018. See ECF No. 23 Ex H. This document provides only the date and time for Niebla's hearing on April 26, 2018. See id. The government has not filed a similar document to show that Niebla received the date and time of the hearing held on April 10, 2018.

In Mendoza-Lopez , the Court determined that the defendants' underlying removal proceedings violated due process because the IJ had accepted their invalid waivers of the right to appeal and failed to advise them of their eligibility to apply for relief from removal. United States v. Mendoza-Lopez , 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). And because those procedural defects burdened the noncitizens' ability to obtain judicial review of their resulting removal orders, the Court concluded that the defendants could collaterally attack those removal orders. Id. at 837-40, 107 S.Ct. 2148.

Between the time the Supreme Court issued its opinion in Mendoza-Lopez and Congress enacted 8 U.S.C. § 1326(d), the Fifth Circuit articulated its own test for a defendant to collaterally attack an underlying removal order. United States v. Estrada-Trochez , 66 F.3d 733, 735 (5th Cir. 1995). Although the Fifth Circuit's formulation differed from § 1326(d), the court has since explained that Congress "effectively codified" its test in the statute. United States v. Lopez-Vasquez , 227 F.3d 476, 483 n.13 (5th Cir. 2000). Accordingly, this Court will apply only the test provided in § 1326(d).

Congress also changed the name of the document from "order to show cause" to "notice to appear." Compare 8 U.S.C. § 1252b(a)(1) (1994)with 8 U.S.C. § 1229(a).

The Pereira Court itself rejected the argument that an NTA's time-and-place information could be optional. There, the government argued that DOJ regulations required an NTA to include only "the time, place and date of the initial removal hearing, where practicable. " Pereira , 138 S.Ct. at 2111 (citing 8 C.F.R. § 1003.18(b) ) (emphasis added). The Supreme Court disagreed, explaining this regulation did not justify "departing from the statute's clear text" requiring date-and-time information in every NTA. Id. at 2118.

This Notice of Hearing only provided the date and time for Niebla's April 26, 2018, removal hearing. See ECF No. 23 Ex. H. However, Niebla's removal hearing actually began on April 10, 2018, and was continued to April 26, 2018, to allow Niebla time to complete an application for asylum. See ECF No. 38, Ex. G, Tracks 1-5. The government has not suggested that Niebla ever received advanced notice of the April 10 hearing.

Niebla alternatively argues that he is able to satisfy the elements of 8 U.S.C. § 1326(d) should the Court require him to do so. Mot. 11-12; Reply 14.

Other circuit courts have recognized the existence of this rule but decided the rule was inapplicable in the cases before them because the noncitizens' appellate waivers were valid. See, e.g., United States v. Soto-Mateo , 799 F.3d 117, 120-21 (1st Cir. 2015) ; Richardson v. United States , 558 F.3d 216, 219-20 (3d Cir.2009) ; United States v. Martinez-Rocha , 337 F.3d 566, 569 (6th Cir.2003).

The Fifth Circuit has explained that, at least in the criminal context, "[t]he right to appeal should not be considered as having been waived or abandoned except where it is clearly established that this is the case." United States v. Harris , 434 F.3d 767, 770-71 (5th Cir. 2005) (quoting McKinney v. United States , 403 F.2d 57, 59 (5th Cir. 1968) ). Accordingly, the Fifth Circuit "construe[s] appeal waivers narrowly, and against the government." United States v. Palmer , 456 F.3d 484, 488 (5th Cir. 2006). However, these standards likely do not fully apply to this case, as the Fifth Circuit has made clear that "procedural protections accorded [a noncitizen] in a removal proceeding are less stringent than those available to a criminal defendant." United States v. Lopez-Ortiz , 313 F.3d 225, 230 (5th Cir. 2002).

The Court also notes that Niebla never received a Form EOIR-26, a Notice of Appeal, or instruction on the appeals process, as required by DOJ regulation, and which are necessary for a noncitizen to appeal the IJ's decision. See generally Recording; see 8 C.F.R. §§ 1240.13(d), 1240.15. Moreover, Niebla was removed from the United States just fourteen days after the IJ issued the removal order. Compare Mot. Ex. D (removal order dated April 26, 2018) with Mot. Ex. E at 2 (removal certification dated May 10, 2018). This is far shorter than the thirty-day period within which an appeal must be filed with the BIA. See 8 C.F.R. § 1240.15.

The government has not disputed any of Niebla's claims relating to his horrific experiences in Mexico. See generally Resp.

Again, the government does not dispute Niebla's factual assertions regarding his time in Mexico. See generally Resp.